# MICHAEL IOVIENO *v.* COMMISSIONER OF CORRECTION
## (SC 15411)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.[1]

Argued February 21—officially released August 26, 1997

[1] This case was argued before Chief Justice Callahan and Justices Berdon, Norcott, Palmer and McDonald. After oral argument, the court decided, sua sponte, to consider the case en banc without further argument, and Justices Borden and Katz were added to the panel.

*Christopher C. Sheehan*, assistant public defender, for the appellant (petitioner).

*Mary H. Lesser*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Christopher Alexy*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BERDON, J. The dispositive issues in this certified appeal are: (1) whether the ten day limitation period applicable to petitions for certification to appeal from judgments in habeas corpus proceedings, set forth in General Statutes § 52-470 (b),[2] implicates a habeas court's subject matter jurisdiction so as to deprive it of authority to grant an untimely filed petition; and (2) whether the failure to file a timely appeal under § 52-470 (b), as a result of ineffective assistance of counsel,

---

[2] General Statutes § 52-470 provides: "Summary disposal of the case. Appeal by person convicted of crime. (a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require.

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

constitutes per se prejudice to the petitioner and therefore satisfies the prejudice requirement for an ineffective assistance of counsel claim under the analysis outlined in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The petitioner's claim arises out of his second petition for a writ of habeas corpus. Following the dismissal of his first habeas petition on its merits, the petitioner filed for certification to appeal from the judgment. The petition for certification to appeal was filed after the expiration of the ten day statutory limitation period provided for by § 52-470 (b), and the first habeas court dismissed it as untimely, holding that the court lacked subject matter jurisdiction to consider a petition not timely filed. The petitioner then sought a second writ of habeas corpus based upon the ineffective assistance of appellate counsel in pursuing the appeal of the first habeas court's judgment, and requested a reinstatement of the limitation period to enable him to petition again for certification to appeal the first habeas court's judgment. Although the second habeas court concluded that the limitation period within which certifications must be requested was not jurisdictional, it dismissed the petition, finding that the petitioner failed to establish, under the second prong of the analysis outlined in *Strickland*, that he was prejudiced by counsel's ineffectiveness. The Appellate Court affirmed the dismissal by the second habeas court without reaching the merits, holding that once the ten day period in which to file a petition under § 52-470 (b) expired, the court lacked subject matter jurisdiction. We granted the petitioner's request for certification to appeal from the decision of the Appellate Court.[3] We reverse the decision of the Appellate Court.

---

[3] We granted the petition for certification, limited to the following questions: "(1) Did the Appellate Court properly conclude that the second habeas court lacked subject matter jurisdiction to grant a new ten day period to appeal from the judgment of the first habeas court?

The Appellate Court opinion sets forth the relevant facts and procedural history. "The petitioner, Michael Iovieno, was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70, unlawful restraint in the first degree in violation of General Statutes § 53a-95, and three counts of burglary in the second degree in violation of General Statutes § 53a-102. On appeal, [the Appellate Court] vacated one of the burglary convictions and remanded the case with direction to render a judgment of acquittal as to that count. [The Appellate Court] affirmed the remaining convictions. *State* v. *Iovieno*, 14 Conn. App. 710, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988) [*Iovieno I*].

"Thereafter, the petitioner filed a petition for a writ of habeas corpus claiming that his trial counsel was ineffective by failing to move to suppress evidence wrongfully seized. The habeas court dismissed the habeas petition, finding that trial counsel's incompetence did not prejudice the petitioner in the manner defined by *Strickland* v. *Washington*, [supra, 466 U.S. 668]. The habeas court's memorandum of decision dismissing the petition was dated February 15, 1991, and was filed on February 22, 1991.

"On March 8, 1991, the petitioner's habeas counsel filed a petition for certification to appeal. This petition was filed four days beyond the time limitation set forth in General Statutes § 52-470 (b). The habeas court concluded that it did not have the discretion to consider a petition that was not timely filed [and denied the petition for certification to appeal]. [On appeal, this court], ruling on a writ of error brought by the petitioner, affirmed the habeas court's decision. *Iovieno* v.

"(2) If the answer to the first question is no, did the Appellate Court nonetheless reach the proper result because of the petitioner's failure to establish prejudice under *Strickland* v. *Washington*, [supra, 466 U.S. 668]?" *Iovieno* v. *Commissioner of Correction*, 237 Conn. 910, 675 A.2d 456 (1996).

*Commissioner of Correction*, 222 Conn. 254, 608 A.2d 1174 (1992) [*Iovieno II*].

"The petitioner filed a second habeas petition claiming that he was denied his right to effective assistance of counsel in his appeal of the dismissal of his first habeas petition. In the second petition, he requested (1) that a writ of habeas corpus be issued to bring him before [the Appellate Court] in order that justice may be done, (2) that the conviction and sentence be vacated and the matter returned to the trial court docket for further proceedings, (3) that his right to appeal from the original habeas court decision be restored provided that a petition for certification be filed within ten days from the date of this decision, and (4) such other relief as deemed equitable and just.

"The [second] habeas court, in addressing the merits of the petition, first found that a statutory right to effective assistance of counsel exists in appeals from adverse habeas corpus decisions. The court then found that the conduct of the petitioner's counsel in failing to file the petition for certification in a timely manner fell below an objective standard of reasonable representation. The court concluded, however, that the petitioner had not proven that such deficient representation had prejudiced him and, therefore, dismissed the petition.

"The petitioner claim[ed] that his [appellate] counsel's conduct constituted per se prejudice, and, therefore, he was not required to prove prejudice. In rejecting this claim, the [second] habeas court stated that the petitioner failed to prove that 'there exists a reasonable probability that, but for the lack of timely filing, his petition for certification would have been granted.' The [second] habeas court granted a timely filed petition for certification to appeal its decision.

"[On appeal, the petitioner asserted] that the [second] habeas court had the authority to remedy his counsel's

failure to file a petition for certification to appeal in a timely manner by 'starting the time limit anew for the filing of the petition for certification from the first habeas decision.' [The Appellate Court concluded] that because the time limitation contained in § 52-470 (b) implicates subject matter jurisdiction, a habeas court does not have the authority to set a new ten day period for filing a petition for certification to appeal. . . .

"The [second] habeas court, in addressing the petitioner's second habeas petition, conducted a thorough analysis regarding the petitioner's ineffective assistance of counsel claim. The court applied the two-prong test enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 668. The court found that the petitioner had satisfied the first prong of *Strickland* by proving that his habeas counsel's performance fell below an objective standard of reasonableness. In examining the second prong of *Strickland*, often termed the prejudice prong, the court applied the criteria established in *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), to determine whether the petitioner had proven, by a preponderance of the evidence, that there existed a reasonable probability that the petition for certification for appeal would have been granted. The court concluded that the petitioner did not satisfy this second prong and, thus, dismissed the habeas petition." *Iovieno* v. *Commissioner of Correction*, 40 Conn. App. 553, 554–57, 672 A.2d 530 (1996) [*Iovieno III*].

I

The petitioner's first claim is that § 52-470 (b), in specifying a ten day limitation period in which a petition for certification to appeal from a judgment of a habeas court must be filed, does not limit the subject matter jurisdiction of a habeas court, but merely defines the scope of review on appeal. The Appellate Court concluded that "because the time limitation contained in

§ 52-470 (b) implicates subject matter jurisdiction, a habeas court does not have the authority to set a new ten day period for filing a petition for certification to appeal." Id., 556. We disagree with the Appellate Court.

In order to determine whether § 52-470 (b), in specifying a ten day limitation period for appealing a judgment of a habeas court, creates a jurisdictional bar preventing the court from entertaining an untimely petition for certification to appeal, we must discern what result the legislature intended when it enacted § 52-470 (b). "There is no more elementary rule of statutory construction than that the intention which the legislature has expressed must govern." *State ex rel. Rourke* v. *Barbieri*, 139 Conn. 203, 207, 91 A.2d 773 (1952). The question of whether a statutory time limitation is subject matter jurisdictional is a question of statutory interpretation. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993). In interpreting statutory provisions, we have held that legislative intent is to be determined by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the limitation was intended to implement, and the statute's "relationship to existing legislation and common law principles governing the same general subject matter." Id. We have also held that " 'every presumption is to be indulged in favor of jurisdiction.' " Id., 765.

The respondent relies on our interpretation of § 52-470 (b) in *Iovieno II* in arguing that the limitation period implicates the subject matter jurisdiction of the habeas court. Although we did not specifically state that the untimely petition for certification to appeal under § 52-470 (b) deprived the habeas court of subject matter jurisdiction in *Iovieno II*, we held that "the habeas court was correct in concluding that it had no discretion to consider an untimely petition for certification to appeal." *Iovieno II*, supra, 222 Conn. 258. The Appellate

Court, in *Iovieno III*, supra, 40 Conn. App. 558–59, relied on this language in deciding that the petitioner's late filing of his petition for certification to appeal his first habeas court judgment under § 52-470 (b) resulted in a jurisdictional bar to that court's ability to entertain the petition for certification to appeal.

In *Iovieno II*, this court held that neither the plain language of § 52-470, nor its legislative history, support the conclusion that the legislature intended to make the time limitation under § 52-470 (b) discretionary, rather than mandatory. *Iovieno II*, supra, 222 Conn. 261. The court noted that, although under § 52-470 (a) a habeas court has considerable discretion to "dispose of the case as law and justice require," the legislature specifically declined to include similar language in § 52-470 (b), evidencing an intent not to provide habeas courts with discretion in considering petitions filed under that section. Id., 258. The court in *Iovieno II* also noted that statements made on the floor of the legislature, during the process of amending § 52-470 in 1957 to include a provision regarding certification to appeal a habeas decision, indicated a desire by the legislature to reduce the number of appeals in criminal matters and hasten ultimate justice without repetitive recourse to appeals. Id., 259. The court therefore interpreted the ten day limitation period of § 52-470 (b) to be nondiscretionary.

Since *Iovieno II*, we have had occasion to examine § 52-470 (b) in further detail. In *Simms* v. *Warden*, 230 Conn. 608, 646 A.2d 126 (1994), we were asked to interpret § 52-470 (b) in order to decide whether a denial of certification to appeal under that section implicated the subject matter jurisdiction of the appellate tribunal. The question raised in *Simms* was whether the language in § 52-470 (b) providing that "[n]o appeal from the judgment rendered in a habeas corpus proceeding . . . may be taken," unless the appeal is certified, was

"intended by the legislature as a limitation on the juris-
diction of the appellate tribunal or as a limitation on
the scope of the review by the appellate tribunal." Id.,
613. We decided that the language was intended by the
legislature "only to define the scope of our review and
not to limit the jurisdiction of the appellate tribunal."
Id., 615. One of the factors that led to our conclusion in
*Simms* was the fact that, "when the legislature enacted
§ 52-470 (b), it limited a statutory right to appeal that
had existed, unconditionally, since 1882." Id., 614. We
also considered "the significant role of the writ of
habeas corpus in our jurisprudence, and the strong pre-
sumption in favor of appellate jurisdiction" existing
under our current law. Id. Together, these factors led
us to conclude that the legislature did not intend the
certification requirement of § 52-470 (b) to limit the
subject matter jurisdiction of the habeas court.

The limiting language of § 52-470 (b), which we
reviewed in *Simms*, is the same language we are asked
to review in this case with respect to the ten day limita-
tion period prescribed by that section, namely, "[n]o
appeal from the judgment rendered in a habeas corpus
proceeding . . . may be taken unless the appellant,
within ten days after the case is decided, petitions the
judge . . . and the judge so certifies."[4] If the prohibi-
tion on the right to appeal with certification contained
in § 52-470 (b) does not implicate an appellate court's
jurisdiction, it logically follows that the time by which
to request that certification, set forth in the same sen-
tence, is not jurisdictional.

Further support for our conclusion that the limitation
period prescribed by § 52-470 (b) is not jurisdictional
may be found by applying our analysis set forth in *Banks*
v. *Thomas*, 241 Conn. 569, 698 A.2d 268 (1997). In *Banks*,
we considered whether the two week limitation period

---

[4] See footnote 2 of this opinion.

provided for taking an appeal by writ of error, pursuant to General Statutes § 52-273,[5] implicated our subject matter jurisdiction. We held that the failure to file a writ of error under § 52-273 in a timely manner did not require a dismissal of the writ due to lack of subject matter jurisdiction. Id., 581–82.

A number of factors compelled our decision in *Banks*. First, we noted that "§ 52-273 contains no language expressly invalidating a writ of error not filed within two weeks from the rendition of the judgment or decree." Id., 583. Second, we observed that "the legislative history of § 52-273 contains no indication that the legislature intended to deprive [appellate courts] of the authority to entertain an untimely writ of error"; id.; such that "noncompliance with [the] filing period would serve as a complete and automatic bar to appellate review of the writ." Id., 584. Third, we recognized that such a result "would constitute a dramatic departure" from the jurisdictional authority for the writ of error historically vested under the common law. Id., 585. Finally, we considered the harsh result that would ensue if the statute were interpreted as embodying a jurisdictional requirement. To interpret the statute as creating a jurisdictional bar to an untimely filed writ of error would have left the plaintiff in *Banks* without any recourse to appellate review to challenge the trial court's summary criminal contempt finding against him and its imposition of a sentence of nine months imprisonment. Id. For all of these reasons, we concluded in *Banks* that neither the statutory language nor the statute's legislative history provided persuasive support

[5] General Statutes § 52-273 provides: "Writ of error; limitations. No writ of error may be brought in any civil or criminal proceeding, unless allowed and signed within two weeks after the rendition of the judgment or decree complained of. No writ of error may be brought in any civil or criminal proceeding for the correction of any error which might have been reviewed by process of appeal."

for the contention that the two week limitation period created a prerequisite to subject matter jurisdiction. Id.

An examination of § 52-470 (b) for the purpose of determining legislative intent in light of the *Simms* interpretation and the *Banks* analysis leads us to the conclusion that noncompliance with the limitation period of § 52-470 (b) was not intended to deprive a habeas court of subject matter jurisdiction to consider an untimely appeal. First, § 52-470 (b) contains no language expressly invalidating a court's jurisdiction to entertain a petition filed after the expiration of the limitation period. "A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision." *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995). Second, the legislative history, while indicative of a desire to limit the number of appeals filed in criminal cases and hasten the final conclusion of the criminal justice process, is not explicit about intending to achieve its goal by limiting the subject matter jurisdiction of habeas courts in considering an untimely petition for certification to appeal.

Third, although no right to appeal in habeas cases existed originally at common law, such a right has existed in our jurisprudence since 1882. *Simms* v. *Warden*, supra, 230 Conn. 614. Thus, as we noted in *Simms*, there is good reason for this court to be hesitant to attribute to the legislature an intent to substantially limit that right, without an explicit expression of such an intent. When changes have been introduced by amendment to a statute, "the presumed change does not go any further than that which is expressly declared or necessarily implied." *King* v. *Board of Education*, 203 Conn. 324, 335–36, 524 A.2d 1131 (1987). "We cannot impute to the legislature . . . in the absence of an

intent clearly expressed in the act, [an intent] to enact [a statute] which involves a departure from existing statutory law." *State ex rel. Rourke* v. *Barbieri*, supra, 139 Conn. 209.

Fourth, the harsh result that would follow if § 52-470 (b) was interpreted to create an absolute bar to appellate review for petitioners who file outside the limitation period provides additional support for our conclusion that § 52-470 (b) does not embody a jurisdictional requirement. Depriving a habeas petitioner of the opportunity to seek certification to appeal amounts to a deprivation of a remedy that could result in the petitioner's release from wrongful incarceration. We recognize that the vicissitudes of the practice of law, as well as the practical incapacity of certain pro se petitioners who are incarcerated, may lead to occasional untimely filings in exceptional circumstances. Thus, habeas courts, in the interests of justice, should have the discretion to grant an untimely filed petition.

For all of these reasons, and particularly in light of our decision in *Simms*, we conclude that the time limitation in § 52-470 (b) does not implicate subject matter jurisdiction. To the extent that the result in *Iovieno II* conflicts with this decision, that case is expressly overruled. Thus, noncompliance with the ten day limitation period of § 52-470 (b) does not deprive a habeas court of subject matter jurisdiction over such an appeal, and whether to entertain an untimely filed appeal is a decision to be left to the sound discretion of the habeas court. In exercising that discretion, a habeas court should take into account the reasons for the delay.[6]

---

[6] Once a court has decided to exercise its discretion and consider an untimely petition, it should proceed in the usual manner to consider the merits of the petition. In that regard, we find it relevant that in *Simms* we adopted the criteria set forth in *Lozada* v. *Deeds*, supra, 498 U.S. 431–32, as guidance for determining whether a habeas appeal is meritorious or frivolous. *Simms* v. *Warden*, supra, 230 Conn. 616. In *Lozada*, the United States Supreme Court held that, in order to obtain a certificate of probable

## II

The petitioner next asserts that he was deprived of his right to the effective assistance of counsel in pursuing an appeal from the first habeas court's judgment. The Appellate Court, in *Iovieno III*, found it unnecessary to address the issue, because it concluded that the courts lack subject matter jurisdiction under § 52-470 (b) to consider an untimely filed petition. Because we disagree with the Appellate Court on the issue of subject matter jurisdiction, we address the petitioner's claim.

### A

As a preliminary matter, the respondent argues that, because there is no right to counsel for the purpose of pursuing an appeal from a habeas corpus judgment, there is consequently no right to the effective assistance of counsel in pursuing such an appeal. The petitioner, on the other hand, contends that there is no basis for the state's argument, because *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), and *Franko* v. *Bronson*, 19 Conn. App. 686, 563 A.2d 1036 (1989), establish that, under Connecticut law, there is a right to the effective assistance of counsel in habeas appeals. We agree with the petitioner.

In *Lozada* v. *Warden*, supra, 223 Conn. 839 n.8, this court recognized that, although there is no federal constitutional right to counsel in habeas corpus proceedings; see *Pennsylvania* v. *Finley*, 481 U.S. 551, 559, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); under Connecticut law there is a statutory right to counsel in habeas proceedings arising out of a criminal matter under General

cause to appeal, a habeas petitioner is required to demonstrate "that the issues [to be raised on appeal] are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis in original; internal quotation marks omitted.) *Lozada* v. *Deeds*, supra, 432.

Statutes § 51-296.[7] *Lozada* v. *Warden,* supra, 838. The statutory right to counsel in habeas proceedings has also been held to extend to habeas appeals. *Franko* v. *Bronson,* supra, 19 Conn. App. 692. Furthermore, we have recognized that "[i]t would be absurd to have the right to appointed counsel who is not required to be competent." *Lozada* v. *Warden,* supra, 839–40. Therefore, we held that the writ of habeas corpus is an appropriate remedy for an ineffective assistance of habeas counsel claim. Id., 843. This remedy, then, also extends to ineffective assistance of counsel claims involving appellate counsel in habeas appeals.

## B

We turn next to the merits of the petitioner's ineffective assistance of counsel claim. The substance of the

[7] General Statutes § 51-296 provides in relevant part: "Designation of public defender for indigent defendant, codefendant. (a) In any criminal action, *in any habeas corpus proceeding arising from a criminal matter,* in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant, unless, in a misdemeanor case, at the time of the application for appointment of counsel, the court decides to dispose of the pending charge without subjecting the defendant to a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation or the court believes that the disposition of the pending case at a later date will not result in a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation and makes a statement to that effect on the record. If it appears to the court at a later date that, if convicted, the sentence of an indigent defendant for whom counsel has not been appointed will involve immediate incarceration or a suspended sentence of incarceration with a period of probation, counsel shall be appointed prior to trial or the entry of a plea of guilty or nolo contendere. . . .

"(c) Prior to a defendant's appearance in court in any matter specified in subsection (a) of this section, a public defender, assistant public defender or deputy assistant public defender, upon a determination that the defendant is indigent pursuant to subsection (a) of section 51-297, shall be authorized to represent the defendant until the court appoints counsel for such defendant." (Emphasis added.)

petitioner's claim is that, when the failure of counsel to petition for certification to appeal from a habeas judgment within the statutorily defined limitation period results in a complete denial of the petitioner's opportunity to appeal the habeas ruling, no further showing of prejudice is required under the *Strickland* analysis. We agree.

Ordinarily, in order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel in the trial context, *Strickland* requires that the defendant establish both that his counsel's performance was deficient, and that as a result of that performance he suffered actual prejudice. *Strickland* v. *Washington,* supra, 466 U.S. 687. In the context of a claim of ineffective assistance of appellate counsel, this court has adopted the two part *Strickland* analysis. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); see also *Bunkley* v. *Meachum,* 68 F.3d 1518, 1521 (2d Cir. 1995).

The first prong of the *Strickland* analysis requires a petitioner to establish that his attorney's performance was deficient, in "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* v. *Washington,* supra, 466 U.S. 687. The proper standard for attorney performance under *Strickland* is one of "reasonably effective assistance." Id. A petitioner must demonstrate "that counsel's representation fell below an objective standard of reasonableness . . . [as measured by] prevailing professional norms." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 425, 589 A.2d 1214 (1991).

The second habeas court, which considered the merits of the petitioner's second habeas petition, concluded that he had successfully established that his appellate

counsel failed to act "reasonably competently," and, therefore, concluded that the petitioner satisfied the first prong of *Strickland*. The second habeas court considered the respondent's contention that, because counsel had contacted the court clerk's office to obtain information as to when the ten day limitation period would commence, and the discussion that followed resulted in counsel's mistaken belief as to when the period would begin, that counsel's representation was reasonably effective. Nevertheless, the second habeas court held that because it found § 52-470 (b) to be clear and unambiguous as to when the limitation period would commence, counsel's behavior was not reasonably competent. Specifically, it found that "[n]o attorney, acting reasonably competently, can substitute an informal discussion with clerical personnel at a court, some of whom are untrained in habeas corpus law, for a careful reading of a clear and unambiguous statute. . . . Failure to [file within ten days of the adverse decision], in the absence of extraordinary circumstances, falls below an objective standard of reasonable representation." We agree with the second habeas court's conclusion that, under these circumstances, the first prong of *Strickland* has been satisfied.

The second habeas court next considered the issue of prejudice under the second prong of *Strickland*. The second habeas court concluded that, although *Strickland* normally requires a petitioner raising an ineffective assistance of counsel claim to establish prejudice by demonstrating that counsel's deficiencies undermined confidence in the reliability of the verdict, when the deficiency deprives a defendant of his entire right to appeal, a different standard should apply. In that situation, it held that a petitioner need prove only that, if his petition had been timely filed, there exists a reasonable probability that the petition for certification to appeal would have been granted.

In *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 458–59, this court decided that the same burden of establishing prejudice under the second prong of the *Strickland* analysis should apply in the appellate context as applies in the context of trial counsel. The court held that "in order for the petitioner to establish prejudice resulting from his appellate counsel's deficient performance, he must establish that, as a result of that performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. Put another way, he must establish that, because of the failure of his appellate counsel to [render effective assistance], there is a reasonable probability that he remains burdened by an unreliable determination of his guilt." Id., 454.

We noted in *Bunkley,* however, that an exceptional situation exists with regard to establishing prejudice "where the prejudice claimed by a habeas corpus petitioner is that he was deprived of his entire [first] appeal because his appellate counsel failed to file papers timely . . . ." Id., 459 n.16. In that situation, we stated that the same standard of prejudice would not apply. Id. Under such circumstances, we recognized that "it would be impossible to determine whether the verdict was unreliable until the appeal had been heard. In such a case . . . prejudice would be established by the absence of [the] appeal." Id.

Similarly, a number of decisions from other jurisdictions hold that when the ineffective assistance of counsel entirely deprives a defendant of his direct appeal of right, a showing of prejudice or likely success on appeal is not required. See *Penson* v. *Ohio,* 488 U.S. 75, 88–89, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988) (where direct appeal of right is involved, showing of prejudice not required when counsel's errors deprive client of appeal altogether); *Rodriguez* v. *United States,* 395 U.S. 327, 330, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969) ("[t]hose

whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings"); *Baker* v. *Kaiser*, 929 F.2d 1495, 1500 (10th Cir. 1991) (where petitioner denied right to counsel, "refusal of the [state] court to grant [petitioner] an out of time appeal deprived him of due process of law"); *Perez* v. *Wainwright*, 640 F.2d 596, 599 (5th Cir. 1981) ("failure to file a timely appeal as promised, without more, constitutes a violation of the Sixth Amendment and [the petitioner] must be accorded an out-of-time appeal"); *Robinson* v. *Wyrick*, 635 F.2d 757, 758 (8th Cir. 1981) ("[i]n situations where ineffective assistance of counsel deprives a defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal").

In the present case, as in the case where a direct appeal has been foreclosed, there are exceptional circumstances that require us to dispense with the prejudice analysis ordinarily required under *Strickland*. Here, the result of counsel's failure to file the petition for certification to appeal within the statutorily prescribed limitation period was to deprive the petitioner of the opportunity to seek appellate review of the dismissal of his first habeas petition. Although the petitioner was not deprived of his first habeas appeal as of right because the right depended upon the granting of certification, he was deprived of a significant, statutorily created right that otherwise would have afforded him an opportunity to seek plenary review of the first habeas court's judgment. Review of this issue by the second habeas court, during the process of evaluating the petitioner's ineffective assistance of appellate counsel claim by performing the *Strickland* analysis to determine whether the procedural default prejudiced the petitioner, is simply not an adequate substitute for the

opportunity to petition for certification from the first habeas court. The first habeas court occupies a superior position from which to consider the petition for certification to appeal, because it is that court which heard the evidence on the merits of the petitioner's first habeas petition.

Furthermore, in cases such as this one involving a procedural default at the appellate level, the prejudice requirement serves a substantially less significant purpose than in other ineffective assistance of counsel cases. In the ordinary case of ineffective assistance of counsel, *Strickland* requires a showing of prejudice because the consequences of the attorney's substandard performance lead to a new trial. In this case, as a result of the ineffective assistance of counsel, we merely return the petitioner to the same position that he occupied at the time of counsel's deficient performance; that is, back before the first habeas court for the opportunity to convince that court that it should grant certification to appeal.

In summary, it serves no useful purpose to require the petitioner, who has been deprived of the opportunity to seek review of a habeas judgment due solely to the ineffective assistance of appellate counsel, to prove actual prejudice. The prejudice that results by virtue of being barred from the right to seek certification to appeal is obvious.[8] We therefore hold that the petitioner

---

[8] Moreover, in this case the record indicates the likely success of his petition for certification to appeal. Judge Scheinblum, the trial judge at the first habeas proceeding, in dismissing the untimely filed petition for certification to appeal, stated: "I would grant you this, that at least as to maybe one of the issues you raised for appeal . . . it might be something that an appellate court would want to deal with. But I've got the first hurdle, and that's the statute [limiting the time in which certification to appeal may be sought]." He also stated: "Now, whether this is going to be a judicially economical decision on this court's part or not, I don't know for sure. I do feel, however, bound by the language of the statute. And even though I may feel that there is merit, at least in part, to some of the issues being raised, I simply find that the language in the statute is compelling, and for that reason, I find that I must deny the petition for certification . . . ."

was not required to establish actual prejudice or the likely success of his petition for certification to appeal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the second habeas court and to remand the case to the first habeas court for consideration of the merits of the petitioner's petition for certification to appeal from the judgment on his first habeas corpus petition.

In this opinion BORDEN, NORCOTT, KATZ and PALMER, Js., concurred.

CALLAHAN, C. J., dissenting. I respectfully dissent. I do not agree with the majority that the present appeal warrants reconsideration of our conclusion in *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 608 A.2d 1174 (1992) (*Iovieno II*). It seems incongruous for us to conclude today that the petitioner's petition for permission to appeal now can be heard by the habeas court when we concluded five years ago that the exact same petition could not be heard because it was not filed within the time specified by General Statutes § 52-470 (b). Moreover, I disagree with the majority's conclusion that whenever a petitioner alleges ineffective assistance of appellate habeas counsel in a second habeas petition, he need only to demonstrate to the second habeas court that his petition for permission to appeal the first habeas court's decision was not filed within the statutory time

In footnote 12 of his dissent, Chief Justice Callahan indicates that Judge Scheinblum's "statements regarding a potential appealable issue are wholly irrelevant here" because Judge Scheinblum was referring to the search and seizure issue raised in the petitioner's habeas petition. Contrary to the dissent's assertion, it is not clear that Judge Scheinblum was referring to the search and seizure issue because he did not explain what he was referring to when he indicated "that there is merit, at least in part, to some of the issues being raised" or that "it might be something that an appellate court would want to deal with." Judge Scheinblum did not, when making these comments, refer in any way to his memorandum of decision on the merits of the habeas petition.

limit, and not that he was prejudiced by the late filing. Prejudice is typically required in ineffective assistance of counsel claims. I fail to see how this scenario requires a different rule.

## I

"[T]he proper analysis of a statutory time limitation on the right to appeal devolves into a question of statutory construction: did the legislature, in imposing the time limitation, intend to impose a subject matter jurisdictional requirement on the right to appeal? 'We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. *State* v. *Kozlowski*, 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith*, 194 Conn. 52, 57, 480 A.2d 425 (1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 572, 522 A.2d 763 (1987) . . . . *Texaco Refining & Marketing Co.* v. *Commissioner*, 202 Conn. 583, 589, 522 A.2d 771 (1987)." *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993).

In *Iovieno II*, we considered at length whether the first habeas court properly concluded that it had no discretion to consider the petitioner's late petition for permission to appeal.[1] We stated: "Section 52-470 (a)

---

[1] Although we never used the term "subject matter jurisdiction" in *Iovieno II*, our determination that a habeas court has no discretion to consider late petitions must mean that late filing implicates subject matter jurisdiction. See *Iovieno* v. *Commissioner of Correction*, 40 Conn. App. 553, 559, 672 A.2d 530 (1996) ("no practical difference between a court's having no subject matter jurisdiction and a court's having no discretion"). The majority does not offer an alternative reading of *Iovieno II*, and I can conceive of none.

provides, in pertinent part, that '[t]he court or judge hearing any habeas corpus shall proceed [in a summary way] . . . to determine the facts and issues of the case . . . and shall thereupon dispose of the case as law and justice require.' . . . Section 52-470 (b) provides, in pertinent part, that '[n]o *appeal* from the judgment rendered in a habeas corpus proceeding . . . *may be taken unless* the appellant, within ten days after the case [was] decided, petitions the judge before whom the case was tried . . . to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies.' (Emphasis added.) According to the plaintiff, the habeas court incorrectly concluded that this statute allows no discretion to the habeas court to consider an untimely petition for certification to appeal. . . . The plaintiff refers to our statement in *Gaines* v. *Manson*, [194 Conn. 510, 528, 481 A.2d 1084 (1984)], that '[i]n the exercise of its power under § 52-470 to grant such relief "as law and justice require," the trial court, much like a court of equity, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established.' Applying these principles to the present case, the plaintiff argues that the broad mandate of power contained in § 52-470 (a), to 'dispose of the case as law and justice require,' implicitly extends to § 52-470 (b), and allows the court discretion to consider a petition for certification not filed within the ten day time frame provided for in § 52-470 (b). We disagree.

" '[I]f the "statutory language . . . is clear and unambiguous . . . courts cannot, by construction, read into such statutes provisions which are not clearly stated." *Frazier* v. *Manson*, 176 Conn. 638, 642, 410 A.2d 475 (1979).' *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991). Furthermore, '[w]hen construing a statute, we do not

interpret some clauses in a manner that nullifies others, but rather " 'read the statute as a whole and so as to reconcile all parts as far as possible.' " *Martone* v. *Lensink*, 207 Conn. 296, 302, 541 A.2d 488 (1988); *Grodis* v. *Burns*, 190 Conn. 39, 44, 459 A.2d 994 (1983).' *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 241, 558 A.2d 986 (1989). With these principles in mind, we again note that under § 52-470 (a), the habeas court is provided with considerable discretion to 'dispose of the case as law and justice require.' The fact that the legislature specifically declined to include this discretionary language in § 52-470 (b) is strong evidence that the habeas court has no discretion in dealing with appeals under § 52-470 (b). See *Chairman* v. *Freedom of Information Commission*, supra [200] (applying the maxim, 'expressio unius est exclusio alterius'). . . . We conclude, from the plain language of § 52-470, that the habeas court was correct in concluding that it had no discretion to consider an untimely petition for certification to appeal.

"Furthermore, even if it is assumed that § 52-470 is ambiguous, and therefore needs to be construed, this result remains unchanged. 'The factors that this court looks to in construing a statute include "its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment." ' *Verrastro* v. *Sivertsen*, 188 Conn. 213, 221, 448 A.2d 1344 (1982). In 1957, the legislature amended § 52-470; see Public Acts 1957, No. 482; to include a provision regarding certification to appeal a habeas decision. The legislative history of Public Acts 1957, No. 482 indicates that the portion of Senate Bill 1100 that added this provision was intended, as noted by Senator John H. Filer, 'to reduce successive frivolous appeals in criminal matters and hasten ultimate justice without repetitive trips to the Supreme Court of Errors.' 7 S. Proc., Pt. 5, 1957 Sess., p. 2936. ' "Although statements made on the floor

of the legislature are not controlling on statutory interpretation, we may take judicial notice of those statements, which are strong indications of legislative intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 195 n.8, 530 A.2d 171 (1987); *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 276, 524 A.2d 621 (1987); *Verrastro* v. *Sivertsen*, supra, 223 n.9." *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 310–11, 592 A.2d 953 (1991).' *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 159, 602 A.2d 988 (1992).

"During discussion on the Senate floor concerning the amendment, Senator Elmer S. Watson read into the record a letter from former Chief Justice William M. Maltbie expressing concern over the delay in the executions for first degree murder. The letter stated, inter alia: 'There are . . . two means which have been used to delay the execution of the death sentence and which . . . may properly be subjected to more regulation than now exists. One of these is the petition for a new trial for . . . newly discovered evidence, with an appeal to the Supreme Court, if it is denied. It has seemed to me that such petitions have been used in certain instances, not because they had any merit, but in a calculated effort to delay the imposition of the penalty. . . . The other means by which, I feel, unjustifiable delay has been caused is through the use of the writ of habeas corpus. Of course both the constitution of Connecticut and the constitution of the United States . . . contain guarantees . . . the effect of which is that any person may at any time bring the writ claiming an illegal confinement. *An appeal* from the decision of the court or judge on such a writ is not, however, within the constitutional guarantees. Very much the same considerations apply to the limitation of appeals in habeas corpus proceedings in criminal cases as I have sug-

gested with reference to petitions for new trials.' [Emphasis added.] 7 S. Proc., [supra], pp. 2938–39.

"To remedy the problem, Chief Justice Maltbie suggested an amendment to the effect that no such appeal 'shall be taken unless the judge before whom the case was tried or a justice of the supreme court of errors shall, within one week after the case was decided, certify that a question was involved in the decision which ought to be reviewed by the supreme court of errors.' Id., pp. 2939–40. The amendment was adopted, modified only to the extent of allowing ten days rather than one week for certification.

"Section 52-470 was thereafter amended again. Public Acts 1967, No. 182 amended the section to require the appellant to petition for certification within ten days after the case is decided rather than requiring the judge to certify within that period. The statute was again amended in 1982; see Public Acts 1982, No. 82-160, § 171; changing the word 'shall' to 'may' in § 52-470 (b), so that the statute now provides that '[n]o appeal . . . *may* be taken unless the appellant, within ten days . . . petitions the judge . . . .' (Emphasis added.) The plaintiff contends that the 1982 change evinces the intent of the legislature to make this section discretionary rather than mandatory. A review of the legislative history of this amendment, however, reveals no such intent. On the contrary, the history is silent as to why the word 'shall' was changed to 'may.'

" ' " 'In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.' " *King* v. *Board of Education,* 203 Conn. 324, 332–33, 524 A.2d 1131 (1987); *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985).' *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.,* 208 Conn. 13, 20, 542 A.2d 1159 (1988). We conclude that the 1982 amendment was

not intended to change § 52-470 (b) from mandatory to discretionary. Rather, it involved a technical rewording and clarification of the statute.[2] The word 'shall,' present in the statute prior to the amendment, did not logically belong, because it did not follow that a person would necessarily appeal the habeas decision. The amendment makes it clear that a person who does, in fact, appeal, must petition the judge for certification within ten days.

"Neither the plain language of § 52-470, nor its legislative history, supports the plaintiff's claim that the court has discretion to consider an untimely petition for certification to appeal. We therefore conclude that the court was correct in denying the petition for certification to appeal. . . . Given the circumstances of this case, we hold that the habeas court was correct in concluding that it lacked the discretion to consider the untimely petition for certification to appeal."[3] (Citations omitted; internal quotation marks omitted.) *Iovieno II*, supra, 222 Conn. 256–62.

Since our decision in *Iovieno II* five years ago, we have twice cited that decision for the proposition that the ten day time limit of § 52-470 does not give habeas

---

[2] "Further support for this conclusion may be found in the title of the amendment, 'An Act Adopting a Technical Revision of Title 52.' Public Acts 1982, No. 82-160." *Iovieno II*, supra, 222 Conn. 261 n.3.

[3] "In view of this holding, it is unnecessary to consider the plaintiff's additional claim that, pursuant to Practice Book §§ 6 and 4187, under which the rules of court are to be interpreted liberally, the habeas court had discretion to consider an untimely filed petition for certification to appeal. For the same reason, we need not consider the plaintiff's claim that we use our supervisory authority under Practice Book § 4183 to reinstate the plaintiff's right to appeal. ' "[T]he conditions required by statute as precedent to taking and perfecting an appeal cannot . . . be modified or extended by any judge or court without express statutory authority." ' *Etchells* v. *Wainwright*, 76 Conn. 534, 538, 57 A. 121 (1904). We note, however, that our decision is in accord with Practice Book § [4166c], which provides that a petition for certification to appeal to the Appellate Court 'shall be made within ten days after the case is decided . . . .' " *Iovieno II*, supra, 222 Conn. 262 n.5.

courts the discretion to consider untimely petitions. *HUD/Barbour-Waverly* v. *Wilson*, 235 Conn. 650, 657, 668 A.2d 1309 (1995); *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 759–60. In *HUD/Barbour-Waverly* v. *Wilson*, supra, 657, we stated: "The legislature is the branch of government empowered to bestow subject matter jurisdiction upon the courts. See *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993). If its language in drafting and enacting a statute is clear and unambiguous, there is no room for alteration of the legislative decision by the judicial branch through Practice Book provision or otherwise. See *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 763. As we stated in *Ambroise*, [t]hat language means what it says. Id., 765. A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way. . . . [*Iovieno II*, supra, 222 Conn. 258] (habeas statute that provides that [n]o appeal . . . may be taken except within statutorily prescribed period gives habeas court no discretion to hear untimely appeals; id., 256–57)." (Internal quotation marks omitted.)

Contrary to the majority, I am unpersuaded that our decisions subsequent to *Iovieno II*, in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994) (*Simms I*), and *Simms* v. *Warden*, 230 Conn. 608, 646 A.2d 126 (1994) (*Simms II*),[4] require us to overrule *Iovieno II* and to allow the petitioner to bring the same petition for per-

---

[4] I recognize that the majority also relies upon our recent decision in *Banks* v. *Thomas*, 241 Conn. 569, 698 A.2d 268 (1997), wherein the court concluded that the failure to file a writ of error within the two week limitation period provided in General Statutes § 52-273 does not implicate our subject matter jurisdiction to hear the late appeal. Because the question of whether a time limitation implicates our subject matter jurisdiction is a question of legislative intent, I am unpersuaded that our interpretation of the legislative intent behind § 52-273 in *Banks* is more persuasive than our interpretation in *Iovieno II* of the legislative intent behind the time limitation of § 52-470 (b).

mission to appeal that we told him five years ago he could not bring. In *Simms I*, this court interpreted the language in § 52-470 (b) which provides that "[n]o appeal . . . may be taken unless the appellant . . . petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies." In interpreting this language, the majority concluded that it does not implicate subject matter jurisdiction and that appellate review may still be available to a habeas petitioner whose timely petition for certification to appeal is denied. The court's determination was based upon its conclusion that the legislature did not intend the denial of a petition for certification to result in an absolute bar to appellate review. In *Simms II*, supra, 615, the court concluded "that the legislature intended the certification requirement only to define the scope of our review and not to limit the jurisdiction of the appellate tribunal." In order to limit the "scope" of our review in accordance with the perceived legislative intent, the majority in *Simms II* created an initial hurdle for habeas petitioners who have not obtained certification to appeal by requiring those petitioners to prove that the court from which certification was sought abused its discretion by not granting certification. Id. In concluding that the certification requirement of § 52-470 (b) was not jurisdictional, the majority in neither *Simms I* nor *Simms II* reconciled its conclusion with this court's previous conclusion in *Iovieno II* that the time limit contained in that same statutory subsection was subject matter jurisdictional.

If there is an inconsistency between the *Simms* cases and *Iovieno II*,[5] I would say that the *Simms* cases should

---

[5] Although an argument can be made that the legislature rationally drew a distinction between late petitions and timely petitions that are simply not

be overruled, rather than *Iovieno II*. First, the plain language of the statute provides that "[n]o appeal . . . may be taken unless" a petition is filed within ten days of the habeas court's ruling. Second, the legislative history is clear that the enactment of § 52-470 was motivated by the legislature's desire to curtail the endless tide of habeas petitions and appeals filed in criminal cases. Senator Filer expressed the legislative intent as being to "hasten ultimate justice without repetitive trips to the Supreme Court of Errors." 7 S. Proc., supra, p. 2936. Under the majority's interpretation of § 52-470, the number of trips to this court remains the same regardless of whether the habeas petitioner complies with the mandates of § 52-470. The only difference is that the petitioner who is denied permission to appeal must take on the additional burden of an abuse of discretion. The majority's interpretation in the *Simms* cases and now in this case clearly undermines the overriding legislative interest in the summary disposition and finality of habeas petitions. "Ultimate justice" is only hastened if we interpret § 52-470 to make compliance therewith mandatory. Because our task is to give effect to the apparent intent of the legislature, I respectfully dissent from part I of the majority opinion. I realize that I concurred with the result reached by the majority in *Simms II*, in light of the precedent of *Simms I*, a case on which I did not sit. *Simms II*, supra, 230 Conn. 618 (*Callahan, J.*, concurring). On further reflection, however, I believe that habeas proceedings have strayed so far from the summary proceeding with limited appellate rights envisioned by the legislature, that the trend should be halted, if not by this court in a reasoned interpretation of existing statutes, then by legislative action in the form of definitive statutes per-

certified, and elected to allow some degree of appellate review of the latter but not the former, I tend to agree with the majority that logic dictates that either both were intended by the legislature to be jurisdictional or neither was intended to be jurisdictional.

taining to the limitations on habeas petitions and appeals of decisions therefrom.

## II

Even assuming that a habeas court has discretion to hear a late appeal, I believe it is a misuse of our limited judicial resources[6] to reinstitute the ten day limitation period of § 52-470 in order to allow the petitioner to file a new petition for permission to appeal.

The following facts are relevant to this issue. The petitioner petitioned the first habeas court for relief alleging ineffective assistance of trial counsel. He claimed that counsel was ineffective because he had failed to move to suppress certain physical evidence seized by the police at his parent's home[7] or a pubic hair taken from his person while he was detained at the police station.[8] The first habeas court found that the petitioner's trial counsel had been ineffective, but concluded that the petitioner had failed to meet his burden of demonstrating that he had been prejudiced. The habeas court reached its conclusion of no prejudice on the basis of a plethora of other evidence pointing to the defendant as the perpetrator of the crimes charged.[9]

[6] The alleged crimes in this case occurred on November 13, 1984, exactly one week after Ronald Reagan was elected to serve a second term as President. The defendant was sentenced on December 13, 1985, and he has been appealing and filing habeas petitions since that time. See footnote 11 of this dissent.

[7] The evidence was seized pursuant to a warrant. The petitioner claimed that it nonetheless should have been suppressed because the items were not described in the warrant affidavit with sufficient particularity.

[8] The defendant claimed that his pubic hair, which matched a hair found at the victim's apartment, was taken without his consent even though a principal part of his defense at trial was that he had cooperated with the police and that the jury should infer his innocence from his willingness to cooperate.

[9] The first habeas court decided the prejudice prong of the ineffective assistance of counsel claim as follows: "Aside from the items that may have been suppressed, the jury had sufficient additional evidence from which to conclude beyond a reasonable doubt that the petitioner committed the

The petitioner's habeas counsel subsequently filed with the first habeas court a petition for permission to appeal that court's determination of no prejudice, but did not do so until four days after the expiration of the ten day limitation period of § 52-470 (b). The first habeas court concluded that it was without jurisdiction to entertain the late petition. We affirmed that conclusion in *Iovieno II*, supra, 222 Conn. 254.

The petitioner then filed a second habeas petition, alleging that his first habeas counsel had been ineffective by failing to file the petition for permission to appeal in a timely manner. The second habeas court enter-

sexual assault. Among the facts upon which the jury could have relied and which would have supported its conclusion are the following:

"The victim's residence was described as being one-half block from the petitioner's, about fifty (50) feet away. The victim and her husband owned two cars, both of which were always parked in the driveway. They were never garaged. The victim's husband was away on business and his car was gone. The victim described the perpetrator as being 5'7" to 5'9" tall, stockyish, but not big-boned, hard and muscular, sporting a clipped beard and mustache, having thick, wavy hair, wearing a jogging suit, consisting of a hooded sweatshirt with a drawstring and sweat pants, wearing soft-soled shoes or sneakers, weighing 170 to 180 [pounds], wearing no jewelry and smelling of beer and smoke as though he had been in a bar. The jury had the opportunity to observe the petitioner. The victim had seen the petitioner about two months prior to the crime when he helped her with items she had purchased and delivered them to her home. The petitioner then knew the victim's first name, 'Marge.' The petitioner was a smoker. Five to ten minutes before the perpetrator entered the victim's house at about 3:30 a.m., the victim received a phone call from a person who identified himself as 'Billings' and who asked for the victim's husband by name. He also called the victim by name. A latent print of the petitioner's left thumb was lifted from the rear door to the victim's house. The rear door was the point of entry by the perpetrator. The petitioner gave a statement to the police officers after he was advised of his rights in which he admitted frequenting a bar the night before and the early morning hours of the day of the incident and drank beer. A K-9 officer with a specially trained dog tracked the perpetrator's scent from the rear door of the victim's house to the petitioner's property.

"Accordingly, the court cannot conclude that even if the questionable evidence were suppressed the outcome of the trial would have been any different."

tained that petition on the merits, and concluded that counsel's performance had been ineffective. It also concluded, however, that the petitioner had not demonstrated a reasonable probability that the first habeas court would have granted the petition for permission to appeal, even if it had been timely filed, and, therefore, concluded that the petitioner once again had failed to meet his burden of demonstrating prejudice arising from the allegedly ineffective assistance of counsel.[10] The second habeas court stated that the first habeas court's determination of lack of prejudice "was reached by the application of well-settled principles of habeas corpus law and [that court's] evaluation of the facts of the case before [it]." In addressing the unlikelihood that the petitioner's petition to the first habeas court for permission to appeal would have been granted, the second habeas court stated: "[That court's] decision involved no novel questions of law but was mostly a factual analysis of the evidence presented by the parties. [That court] measured the prosecution and defense cases at the petitioner's criminal trial after excluding the items which the petitioner had claimed were illegally seized and found that the case against the petitioner remained a strong one. . . . [This] court concludes that the petitioner has failed to prove [that] there exists a reasonable probability that the petition for certification to appeal would have been granted but for the late filing."

Now, on the petitioner's second trip to this court since the institution of his first habeas petition, the

___

[10] I reach no conclusion about whether the focus of the second habeas court's prejudice analysis should have been: (1) whether there is a reasonable probability that the first habeas court would have granted a timely filed petition; or (2) whether there is a probability sufficient to undermine confidence in the verdict that he ultimately seeks to overturn. See *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 459, 610 A.2d 598 (1992) (in order to prevail on claim of ineffective assistance of appellate counsel, habeas petitioner must demonstrate that "it is reasonably probable that he

majority not only squarely overrules our first decision rendered in *Iovieno II* in 1992 on precisely the same issue, but it also allows this futile habeas marathon to continue by remanding the case to the first habeas court. As both habeas courts aptly noted, the evidence against the petitioner is overwhelming. There is not a shred of doubt, with or without the evidence that the petitioner claims his trial counsel should have moved to suppress, that the petitioner committed the sexual assault alleged. The fingerprint evidence, the canine tracking evidence, the perpetrator's knowledge of the victim's name, the proximity of their residences, the victim's accurate description of the physical features of her attacker and the odors that accompanied him, and the petitioner's attempted commission of a very similar crime only two hours before the commission of the crime at issue are more than sufficient to support a conclusion beyond a reasonable doubt that the petitioner is guilty. The majority is now sending this case back to the first habeas court so that it can consider whether reasonable minds might differ with its conclusion that the petitioner did not satisfy the prejudice element of *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Lozada* v. *Deeds*, 498 U.S. 430, 111 S. Ct. 860, 112 L. Ed 2d 956 (1991) (outlining criteria for granting habeas petitioner permission to bring appeal). It strikes me that from the record, without the necessity of a remand, this court is as able as the first habeas court to determine whether there is an appealable issue in this case.[11] Plainly, there is

---

remains burdened by an unreliable conviction"; id., 463; not simply that he would have prevailed on appeal).

[11] I am unpersuaded by the majority's reliance on the per se prejudice analysis adopted in cases where a criminal defendant has been denied his first appeal as of right altogether. See *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 465 n.16. The reason that we have assumed prejudice when a petitioner has been denied his initial appeal from a judgment of guilt is that in those instances it is "impossible to determine whether the verdict was unreliable." In this case, the petitioner: (1) had his appeal as

not.[12]

I respectfully dissent.

of right; *State* v. *Iovieno*, 14 Conn. App. 710, 543 A.2d 766 (1988); (2) was denied certification to appeal that decision; *State* v. *Iovieno*, 209 Conn. 805, 548 A.2d 440 (1988); (3) filed an unsuccessful petition for habeas corpus; (4) filed an untimely petition to appeal that decision that was denied; (5) filed an unsuccessful appeal in this court seeking to have his late petition considered; (6) filed a second unsuccessful habeas petition based on the late filing of the appeal petition; (7) unsuccessfully appealed that decision to the Appellate Court; *Iovieno* v. *Commissioner of Correction*, 40 Conn. App. 553, 672 A.2d 530 (1996); and (8) now, on the granting of certification; *Iovieno* v. *Commissioner of Correction*, 237 Conn. 910, 675 A.2d 456 (1996); appeals to this court from the most recent Appellate Court decision. During the course of this seemingly endless taxpayer financed litigation, the petitioner's arguments have become abundantly clear. For that reason, I see no reason why we cannot decide, just as the habeas court will on remand, whether there exists a substantive issue that merits further appellate attention.

[12] I disagree with the majority's assertion in footnote 8 of the majority opinion that "in this case the record indicates the likely success of [the petitioner's] petition for certification to appeal." In support of this assertion, the majority points to the first habeas court's statement to the petitioner as follows: "I would grant you this, that at least as to maybe one of the issues you raised for appeal . . . it might be something that an appellate court would want to deal with." It appears plain from reading the first habeas court's memorandum of decision that of the two issues raised by the habeas petition, the one that gave the court pause was the petitioner's claim that his incarceration was illegal because his conviction was based upon evidence that was seized in violation of the fourth amendment to the federal constitution and article first, § 7, of the state constitution. At the time of the petitioner's habeas, it had been established as a matter of federal constitutional law "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone* v. *Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). In 1988, in *Payne* v. *Robinson*, 207 Conn. 565, 569 n.1, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), we specifically declined to address "the question whether the holding in *Stone* v. *Powell*, [supra, 465], that claims under the exclusionary rule of the fourth amendment may not normally be raised in federal habeas corpus proceedings applies equally to state habeas corpus proceedings. This issue must await proper briefing in another case." Thus, in the present habeas proceedings, the habeas court was faced with the precise issue that we had highlighted for future review in *Payne*. After rejecting the state constitutional claim, the habeas court wrote: "Perhaps the case at bar raises the issues alluded

MCDONALD, J., dissenting. I agree with the conclusion reached by Chief Justice Callahan in his dissent. Accordingly, I concur in the result that the dissent would reach.

to but unresolved by the Connecticut Supreme Court in *Payne* v. *Robinson* [supra, 565]." Thus, it appears certain from the record that when the habeas court stated that one of the issues raised by the petitioner might warrant appellate review, the court was referring to the search and seizure claim rather than the ineffective assistance of counsel claim. The petitioner has since abandoned the search and seizure claim, perhaps on the basis of our subsequent decisions in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 589 A.2d 1214 (1991), and *Simms II*, supra, 230 Conn. 617, in which we applied the cause and prejudice standard to attempts by petitioners to raise constitutional claims for the first time in habeas proceedings. Therefore, the habeas court's statements regarding a potential appealable issue are wholly irrelevant here.