[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4038
On June 28, 1991, the petitioner, Ivan Blades, was convicted of murder in violation of General Statutes § 53a-54a in the Superior Court for the Judicial District of New London, Docket CR 10-176656, by a three judge panel, Austin, J., Conway, J. and Quinn, J. On September 26, 1991, he was sentenced to a term of forty-five years. On appeal his conviction was affirmed, State v. Blades, 225 Conn. 609, 626 A.2d 273 (1993). Presently he is committed to the custody of the commissioner of correction serving that term.
On October 30, 1991, the petitioner filed a petition for writ of habeas corpus, which petition was revised on November 21, 1997, alleging ineffective assistance of counsel and, in the alternative, actual innocence. The claim of ineffective assistance is based upon the allegation that trial counsel, Public Defender Peter Scillieri, failed to present the affirmative defense of mental disease or defect. The claim of actual innocence is premised on the allegation of newly discovered medical evidence, that the petitioner suffered from mental illness or defect at the time of the commission of the crime. On November 21, 1997, this matter was tried to the court. The respondent's brief was filed on December 23, 1997 and the petitioner's on December 29, 1997.
The background facts that could be reasonably found by the trier of fact are set forth in the Supreme Court opinion State v. Blades, supra, 225 Conn. 611-614, and it would serve no purpose to reiterate them here. It is sufficient for this habeas court to note that at his trial, the petitioner, without contesting that he had killed the victim, asserted the affirmative defense of extreme emotional disturbance pursuant to General Statutes §53a-54a (a). The trial court concluded that the defendant had failed to prove the defense of extreme emotional disturbance by a preponderance of the evidence and found him guilty of murder.
 I 
The petitioner claims that he was rendered ineffective assistance at his criminal trial in that trial counsel failed to explore the effect of cocaine on the mental state of the petitioner, failed to recognize the correct nature of the petitioner's mental health by presenting a defense of extreme emotional disturbance and failed to explore the alternative CT Page 4039 defense of mental disease or defect.
John Felber. M.D., a psychiatrist, was called by the petitioner at his habeas hearing to testify for the purpose of rendering his expert psychiatric opinion as to the mental state of the petitioner on the date of the commission of the crime. Felber holds a law degree as well as a medical degree and presently holds the position as an assistant clinical professor at the University of Connecticut School of Medicine. At the habeas hearing, Felber testified that he had seen the petitioner on two occasions on February 18, 1994 and on October 24, 1997. During the first consultation on February 18, 1994, which lasted about one hour, he found the petitioner to have a "marked flatness of affect, lack of spontaneity and vagueness of thought and verbal expression." (Petitioner's Exhibit 1, Report of May 23, 1994, p. 2.) He further noted that "[a]t times, his answers to questions were non responsive and tangential. His intellectual functioning was below par." (Petitioner's Exhibit 1, Report of May 23, 1994, p. 2.) As a result of this examination as well as a review of several documents, including a psychiatric evaluation by Kenneth Selig, M.D., a psychological profile by W. Dean Pfeifer, Ph.D., statements by friends and family members and investigation reports, Felber determined that the petitioner was suffering from the effects of substance abuse on his nervous system and his mental capacity on November 30, 1988, the day of the crime. (Petitioner's Exhibit 1, Report of May 23, 1994, p. 2.) Felber further concluded that the petitioner's "ability to conform his conduct to the requirements of the law on or about November 30, 1988 was most probably impaired."(Petitioner's Exhibit 1, Report of May 23, 1994, p. 2
On July 22, 1994, after reviewing letters, notes, poems and other writings forwarded to him, Felber supplemented his earlier report stating that "[t]he material I read confirmed my diagnostic impression of a patient suffering from a thought and affect disorder, commonly found in schizophrenia and/or psychotic disorders due to prolonged, intensive substance abuse (cocaine, crack). I do not find any symptoms of excessive emotional distress or duress. In fact, the personality profile and mental status of Ivan Blades contradict the notion of an intense emotional experience or condition."
"I wish to reiterate my original statement concerning the patient's serious mental and emotional pathology due to prolonged substance abuse. Ivan Blade's mental condition at the time of his criminal offense certainly denoted impaired judgment, insight and CT Page 4040 impulse control. In my opinion, on or about November 30, 1988, his ability to conform his conduct to the requirements of the law was significantly diminished. This fact was neither sufficiently presented nor acknowledged at his trial." (Petitioner's Exhibit 1, Report of July 22, 1994.)
Felber briefly saw the petitioner for a second time on October 24, 1997 and found the petitioner to be a completely different person. Felber testified at the habeas hearing that the petitioner was warm, not neutral or flat, cooperative, friendly and could relate events that he could not relate in 1994. Felber found the petitioner in 1997 to be a fairly normal individual with deep religious convictions and no longer showing the earlier symptoms that he described as similar to schizophrenia. He noted that, while schizophrenia is not reversible, damage to the central nervous system can be reversed. Felber testified that, within a reasonable degree of medical certainty, at the time of the commission of the crime the petitioner was severely mentally ill. Felber stated that his visit with the petitioner in 1997 confirmed for him that his 1994 diagnosis was correct. Additionally, he indicated that the 1997 meeting coupled with the 1994 diagnosis allowed him to extrapolate the results to project the condition of the petitioner in 1988. He assumed that the condition of the petitioner in 1988 was due to the influence of drugs and the marked improvement in the condition of the petitioner from 1994 to 1997 was a result of the deprivation of drugs. Felber further stated that he accepted all of the background facts and observations accumulated by Selig, the psychiatrist hired by trial counsel to examine the petitioner, but disagreed with Selig's diagnosis and conclusions. Felber also testified that he did not read the transcript from the original criminal proceedings, which included the testimony of the petitioner at sentencing, even though he felt that it would have been important to review it. He stated that he was not offered the transcript nor did he request it. Further, Felber never discussed his observations or diagnosis with Selig and noted that it is "very usual" for different psychiatrists to reach different conclusions. Felber additionally testified that the trial court reached the appropriate conclusion as to the extreme emotional disturbance defense since that was, in his opinion, an incorrect diagnosis.
Selig, who also holds a law degree as well as a medical degree, was a co-director of the Forensic Consultation Program at The Institute of Living in Hartford, Connecticut, at the time of CT Page 4041 his examination of the petitioner in 1989. In addition to the numerous interviews that Selig conducted with the petitioner, he also interviewed the petitioner's parents. Trial counsel forwarded to Selig numerous documents relating to the arrest of the petitioner as well as documents concerning his employment history and other medical records. Additionally, Selig had a psychological evaluation done of the petitioner by Pfeifer and Selig utilized these results in his report. Selig was not called as a witness at the habeas hearing. His report of January 12, 1990, however, was admitted as Petitioner's Exhibit 3. This extensive twenty-four page report describes the psychiatric evaluation that was administered to the petitioner over the course of fourteen visits by Selig consuming some 21 1/2 hours. The stated purpose of the evaluation was to determine "whether a defense of Extreme Emotional Disturbance, as defined in Section53a-54a of the Connecticut General Statutes, could apply to this case." (Petitioner's Exhibit 3, p. 1.) While Selig concluded that the petitioner was suffering from extreme emotional disturbance at the time of the commission of the crime he also found that "he was not so emotionally disturbed at the time, however, that he lost touch with reality such that he lacked substantial capacity to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. The insanity defense, therefore, is not available." (Petitioner's Exhibit 3, p. 3.)
 II
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. Copas v. Commissioner of Correction,234 Conn. 139, 153, 662 A.2d 718 (1994). The Connecticut Supreme Court has adopted the two-pronged test articulated in Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984) to evaluate claims of ineffective assistance of counsel.Copas v. Commissioner of Correction, supra, 154. In order for the petitioner to succeed in his claim that he was denied effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, supra 687;Iovieno v. Commissioner of Correction, 242 Conn. 689, 703,699 A.2d 1003 (1997); Bunkley v. Commissioner of Correction,222 Conn. 444, 445, 610 A.2d 598 (1992). CT Page 4042
In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357,559 A.2d 206 (1989). Competent representation does not mean representation free of any error. Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Id. "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v. Commissioner of Correction,36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912,659 A.2d 183 (1995).
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) Stricklandv. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." ld., 90; Quintana v. Warden, 220 Conn. 1, 5,593 A.2d 964 (1991); Williams v. Warden, 217 Conn. 419, 423, 586 A.2d 582
(1991); Jeffrey v. Commissioner of Correction, supra,36 Conn. App. 219-20.
With respect to the second prong of the Strickland test, the petitioner must demonstrate that, "counsel's errors were so CT Page 4043 serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner of Correction, supra,234 Conn. 147. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v.Washington, supra, 694. "When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) Fair v. Warden, 211 Conn. 398, 408,559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S.Ct. 512, 108 L.Ed.2d 514
(1989); Jeffrey v. Commissioner of Correction, supra,36 Conn. App. 220-21.
 III
Trial counsel was cognizant of the possibility of a mental health defense and retained a forensic psychiatrist to conduct a thorough evaluation. At trial, trial counsel presented a defense predicated on Selig's conclusions, constructed on information related to all facets of the petitioner's life. The petitioner claims that trial counsel erred by limiting the scope of Selig's investigation. The petitioner's claim depends upon the opening sentence of Selig's January 12, 1990 report in which he states that the evaluation is being done "for the purpose of determining whether a defense of Extreme Emotional Disturbance" exists. (Petitioner's Exhibit 3, p. 1.) The petitioner claims that since trial counsel limited the scope of the examination, the true mental state of the petitioner was not discovered. This argument, however, is contradicted by the conclusions of Selig in which he states that the petitioner "was not so emotionally disturbed at the time, however, that he had lost touch with reality such that he lacked substantial capacity to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law." (Petitioner's Exhibit 3, p. 3.) Thus it is apparent that despite any restrictions counsel may have suggested to Selig, Selig conducted a complete evaluation. CT Page 4044
Selig spent more than twenty hours with the petitioner evaluating his condition. In addition, he reviewed many documents relating to the petitioner's work history and background, interviewed family members and ordered a psychological evaluation. The psychological evaluation by Pfeifer concluded that the petitioner's IQ fell "with[in] the average range of intellectual abilities. The Full Scale IQ score corresponds to the 55 percentile indicating that Ivan is functioning intellectually at a level equal to or better than approximately 55 percent of adults the same age." (Respondent's Exhibit A. p. 5.)The psychologist also noted that "[h]is responses to the evaluation instruments indicate that he is somewhat inhibited and becomes uncomfortable when experiencing strong emotions. In his own words, `I always have to have control' and `I don't open myself up readily.' His affect appears constricted." (Respondent's Exhibit A, p. 6.) Petitioner argues that Selig's diagnosis, based upon Selig's observations and the report of the psychologist. was incorrect. He claims that this was confirmed by the trial court's failure to accept the extreme emotional disturbance defense advanced by trial counsel. The fact that the court found that the defense of extreme emotional disturbance was not proven at trial, however, does not mean that the conclusion reached by Selig that an insanity defense was not available was also incorrect.
The Court does not find the testimony of Felber convincing or persuasive. Felber's failure to read and consider the transcript of the petitioner's statement at sentencing is significant. Felber stated that it would have been important to review that transcript in evaluating the petitioner. At sentencing the petitioner can be described as loquacious, if not eloquent. Felber, who met with the petitioner for the first time in 1994, attempts to predict the mental condition of the petitioner in 1988 by extrapolating his condition back to that date based upon his observations in 1994 and an update in 1997. However, after stating that he accepted the observations of Selig although not the conclusions, when confronted on cross examination about some of Selig's reported observations he indicated that he disagreed with those observations. Thus the factual observations of Selig, which were made by directly observing the petitioner at a time far more proximate to the date of the commission of the crime than when Felber observed the petitioner, are not consistent with Felber's findings. The court accepts the observations of Selig and Pfeifer. Additionally, Felber indicated that the petitioner's CT Page 4045 intellectual function would have been diminished in the period from 1988 to 1994. Yet a psychological evaluation done by Pfeifer indicates that the petitioner's IQ was well within the normal range when he was tested in 1989 and the other tests that were given indicated no abnormality. The petitioner was also able to respond and communicate with Pfeifer. This ability to communicate was consistent with the observations of Selig and the petitioner's lengthy address to the court at sentencing. While that is not to say that the petitioner's intellectual function may not have been higher had he not been a drug abuser, it is inconsistent with Felber's view that the petitioner would not have been logical or coherent in the period from 1988 to 1994. The court rejects Felber's opinion as being inconsistent with the facts as they existed at the time of the commission of the crime.
Therefore, the court does not accept the findings and conclusions of Felber that the petitioner lacked substantial capacity to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. Thus, the court finds that the petitioner has failed to meet his burden of proving that he was denied effective assistance of counsel at his trial based upon the standards set forth above. Having rejected the conclusions of Felber that the petitioner suffered from mental disease or defect at the time of the commission of the crime, the court further finds that no credibly newly discovered evidence exists.
The petition is dismissed.
Zarella