[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this habeas corpus action, the petitioner John Denby makes a claim that he is being confined unlawfully because he received ineffective assistance of counsel at his criminal trial and also at the trial of his prior habeas corpus action. He claims that but for the ineffective assistance of his prior habeas counsel, he would have been successful in his prior habeas action. He also claims that he is innocent in fact. The Warden, represented by the Office of the State's Attorney, has filed a return denying the petitioner's assertions of ineffective assistance of counsel and actual innocence.
The petitioner was convicted after a jury trial of Possession of Cocaine with Intent to Sell by a Person Not Drug Dependent. Conn. Gen. Stat. § 21a-278(b) and Possession of Cocaine with Intent to Sell within 1000 Feet of a School, Conn. Gen. Stat. § 21a-278a(b).
The state's case at trial consisted largely of the testimony of two police officers, who, acting on a tip, conducted an investigation of drug dealing activities in the Newhallville neighborhood of New Haven. The first officer testified that he observed the petitioner on the front porch of a house conduct two CT Page 228 hand-to-hand narcotics transactions. The petitioner became alerted to the presence of the officers, raced inside, and was cornered by officers who patted him down, recovering money on his person and drugs packaged for sale. The defendant and several witnesses testified that he had been inside the house the whole evening watching a Chicago Bulls game on television when the officers simply walked in without a warrant and arrested him. The jury returned a verdict of guilty on both counts. The petitioner was sentenced to a term of sixteen years on the first count and three years on the second, for a total effective sentence of 19 years.
The petitioner's conviction was affirmed by the Appellate Court, State v. Denby, 35 Conn. App. 609 (1994), and by the Supreme Court, State v. Denby, 235 Conn. 477 (1995). Thereafter, the petitioner brought an application for a writ of habeas corpus which was tried before Judge William J. Sullivan. At that habeas hearing, the petitioner claimed that trial counsel had been ineffective by 1) not advising him of the correct combined maximum penalty for the two crimes with which petitioner was charged; 2) not presenting all available evidence of the petitioner's drug dependency, the presence of drug dependency being a defense to the first charge; and 3) failing to object to certain alleged comments exchanged between the prosecutor and a juror concerning the trial schedule. The first habeas court considered all of these issues and found against the petitioner.
The petitioner now brings a second habeas action. He alleges that his court-appointed attorney at the hearing in his first habeas action 1) should have presented the issues related to trial counsel's advice regarding maximum penalties and regarding evidence of drug dependency in a more convincing manner, para. 10, a-f, i, and j of the Amended Petition; 2) should have raised and presented evidence related to a purported offer of a plea bargain, and of a later offer of a sentence modification, para. 10, g-h, and m; 3) should have raised and presented evidence of trial counsel's failure to present more convincing evidence of the inability of a police officer to overhear an incriminating conversation which led to the arrest and conviction of the petitioner, para. 10, k; and 4) should have raised the failure of the petitioner to have been provided with counsel at his arraignment and pretrial, para. 10, 1. The petitioner alleges that the performance of prior habeas counsel was so deficient in each of these areas as to have been ineffective and thus a new writ of habeas corpus with remedial orders regarding his CT Page 229 convictions should issue.
THE RIGHT TO EFFECTIVE ASSISTANCE OF HABEAS COUNSEL
The Connecticut Supreme Court has held that Conn. Gen. Stat. § 51-296(a) — the statute mandating the appointment of counsel for indigent defendants in habeas corpus matters — includes the requirement that counsel be effective and competent.Lozada v. Warden, 223 Conn. 834, 838-39 (1992). The remedy for ineffective assistance of habeas counsel is itself a writ of habeas corpus. Id., 842-43.[1]
In a case in which the first habeas action is predicated on a claim of ineffective assistance of trial counsel, "the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective."Id., 842. The legal standard by which both claims are to be measured is that enunciated in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267,104 S.Ct. 3562, 82 L.Ed.2d 864 (1984): ". . . that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense. . . ." Id., 466 U.S. at 687. See also Iovieno v. Commissioner of Correction, 242 Conn. 689,703-04 (1997). The petitioner must prove that the two prongs ofStrickland v. Washington, supra, objective ineffectiveness and actual prejudice, are present in the performance of both habeas counsel and trial counsel. The Supreme Court has characterized this as a herculean task. Lozada v. Warden, supra, 843.
THE ADVICE OF TRIAL COUNSEL
At trial, the petitioner was represented by Donald Dakers, formerly a special public defender but at that time an attorney with New Haven Legal Assistance. Mr. Dakers has been a lawyer for 33 years with 26 of those representing persons accused of serious criminal offenses.[2] Prior to the time he retained Mr. Dakers, the petitioner, who had been out on bond, had been unrepresented on this charge. He had other pending charges however and was represented on those by another private attorney, Richard Silverstein.
The petitioner had a strong point of view that remained unshaken throughout his representation by Mr. Dakers: the petitioner maintained that the police had set him up and that he was not guilty of the offenses charged. The petitioner was not CT Page 230 interested in any plea deal and Mr. Dakers remembers no deal being offered. Mr. Dakers advised the petitioner before trial that the maximum sentence he was facing was fifteen years on the charge of Intent to Sell and a mandatory consecutive sentence of an additional three years on the School charge, for a total exposure of eighteen years. In fact the maximum sentence on the charge of Intent to Sell was twenty years, not fifteen, so that the petitioner's exposure was twenty-three years, not eighteen. He was sentenced to nineteen years.
At the habeas trial, Mr. Dakers admitted that he had given the petitioner incorrect advice about the petitioner's exposure to incarceration. The first habeas court found that on this point the petitioner had failed to prove either that counsel's representation of him was deficient or that the petitioner was prejudiced as a result.
This court has heard basically the same evidence with the addition of testimony from Attorney Louis Avitabile, who testified that defense counsel's failure to give correct advice to a client about maximum exposure to incarceration falls below the standard of care for criminal trial counsel. The petitioner asserts that had previous habeas counsel presented this type of expert testimony at the first habeas trial, the habeas judge's ruling would likely have been different.
This court finds, however, that the petitioner is not credible when he asserts that had he known, of the difference in his exposure, he would have actively sought to negotiate a plea deal rather than risking a trial. This court is convinced that the petitioner thought he could win an acquittal at trial and refused to cooperate with his trial counsel in any discussion of a plea bargain. The failure of first habeas counsel to present expert testimony about trial counsel's asserted deficient performance on this issue was merely cumulative and made no difference in the outcome of the first habeas case.
THE ISSUE OF DRUG-DEPENDENCY
The petitioner has presented evidence in this second habeas action from an expert in substance abuse which he alleges would have made a difference in the outcome of his first habeas trial if it had then been presented on his behalf. Robert Sant'angelo, a licensed drug and alcohol counselor, reviewed a number of medical and other records of the petitioner, also introduced as CT Page 231 exhibits in this habeas proceeding, and interviewed the petitioner to administer the Substance Abuse Subtle Screening Inventory (SASSI), an instrument used to help determine chemical dependency. Mr. Sant'angelo's opinion is that the petitioner is chemically dependent. The petitioner also testified compellingly at this habeas trial about his long history of problems with drugs and alcohol.
He had testified in his own defense at his criminal trial that he was dependent on illegal drugs. He bolstered this evidence of drug dependency at his criminal trial with testimony from his brother-in-law Willie Garver who testified that the two of them had used drugs together. At the first habeas trial, the issue was not squarely presented to the court of whether his trial counsel had been ineffective by failing to offer further evidence at the criminal trial to rebut the element of non-drug-dependency.
Neither the testimony of Mr. Sant'Angelo nor the medical evaluation records presented to this court are dispositive of the issue of drug dependency. There was evidence at the criminal trial from the petitioner and another witness from which the jury could have concluded that the petitioner was drug dependent. Had Mr. Sant'Angelo testified at the trial, his testimony would have had the weakness then that it does now. Retained by the defense after the petitioner was arrested and charged with these crimes, Mr. Sant'Angelo never had the benefit of examining the petitioner at or near the time of the events. Sant'Angelo's testimony contained only a post hoc assessment of the petitioner's past diagnosis based on past medical records.
The records of medical evaluations, to be sure, show that the petitioner has a long history of drug abuse. However, the presentation and emphasis on such evidence would likely have undercut the petitioner's primary theory of defense — that he didn't do it. First, many of these records were generated by the Department of Corrections as a result of screenings during prior periods of incarceration, a fact that would otherwise remain unknown to the jury. Second, the more he and his counsel chose to emphasize how much his desire for drugs controlled his actions, the less likely the jury was to believe that the petitioner would not have engaged in the crime of possession with intent to sell. Moreover, at the first habeas trial, the petitioner's trial counsel testified that he had no recollection of any discussion with the petitioner about a trial strategy that would have attacked the claim that the petitioner was non-drug-dependent and CT Page 232 admitted the difficulty of advancing such alternative defense theories simultaneously.
The failure of petitioner's trial counsel to introduce evidence of prior medical records or testimony through a drug and alcohol counselor or other expert to buttress the petitioner's defense that he was drug dependent did not represent deficient performance and did not prejudice the defense. The failure of prior habeas counsel to raise this issue likewise does not meet the Strickland standards.
THE OFFER OF A PLEA BARGAIN OR SENTENCE MODIFICATION
The petitioner alleges that his trial counsel did not inform him of an offer of a plea bargain prior to trial and that his first habeas counsel failed to raise this issue. Mr. Dakers, trial counsel, could not remember any substantive plea negotiations. Dakers's memory was quite clear, however, that every time he tried to raise the issue with petitioner of opening such negotiations with the prosecutor, the petitioner was adamant that he did not want to make any deal. Mr. Silverstein had some memory of a judge at a pre-trial conference making a suggestion (four years to serve) about a disposition of the charges on which Silverstein was representing petitioner and perhaps rolling in a disposition of the pending drug charges as well. But there is no evidence that any offer ever came from the state's attorney about this.
The petitioner claims that during the first habeas trial there was an offer of a sentence modification which was rejected due to the ineffective assistance of his habeas counsel. But again there is no credible evidence that such an offer was ever made.
The court is unable to conclude that trial counsel or habeas counsel failed to communicate any offers to petitioner, the effect of which would have been to mitigate the petitioner's sentence.
THE FAILURE TO PRESENT EXPERT TESTIMONY OF AN AUDIOLOGIST
The petitioner claims that his trial counsel's performance was deficient in that he failed to retain the services of an expert in audiology to testify that the investigating officer could not have heard any words said by or to the petitioner during the surveillance that led to the petitioner's arrest. The officer who CT Page 233 conducted the surveillance testified that he had visually observed two transactions which appeared to be drug purchases but believed he heard only a single word — the word "one" — during his entire surveillance, spoken by the purchaser in the first transaction. The petitioner claims that the failure of counsel at his first habeas trial to raise this issue amounts to deficient performance.
As support for this proposition the petitioner offers evidence from Pamela Paine, an audiologist with a Masters Degree and fifteen years experience at the University of Connecticut. She testified that from fifty feet away it was improbable that the officer could have heard a voice in conversation.[3] She admitted that she took no measurements of sound at the scene of petitioner's arrest and that she was not familiar with the vantage point of the observing police officer. She did not know how loud the speaking voice was of the individual whom the officer heard making the buy.
The ability to judge whether it is likely that a conversation can be overheard is one that comes with ordinary human experience. While it might have been helpful to know what the average person could hear at an average conversational tone with an average amount of ambient noise on an average clear night, it would only have been helpful and not dispositive or binding on the jury. Furthermore, whether the officer did or did not actually overhear the single spoken word was not material to the validity of the arrest, since his testimony about his visual observations, without hearing anything, were more than sufficient to support a determination of probable cause and eventual conviction. That the auditory observation of the officer was inconsequential to the case is reinforced by the fact that the defense did not explore in cross-examination the officer's ability to have heard the remark in question and never mentioned it directly in closing argument.
It is not by itself deficient performance for trial counsel to fail to present expert witness testimony on a subject as collateral as this in which jurors as laypersons can apply their own common knowledge and common sense. Trial counsel was not legally ineffective in failing to present such evidence.
Nor was habeas counsel ineffective in failing to raise this issue later. It is not the role of habeas counsel or the trier of fact in a habeas action to be a "Monday morning quarterback" — to CT Page 234 think up every possible thing that could have been done at trial to alter the unsuccessful outcome and to assign an "ineffectiveness" label to it. Habeas counsel was not ineffective in failing to raise this issue.
THE FAILURE TO RAISE THE ISSUE OF PETITIONER'S LACK OF COUNSEL AT ARRAIGNMENT AND PRETRIAL
The petitioner asserts that he lacked counsel at his arraignment and at pretrial conferences and that this tainted the entire course of these charges against him. He alleges that such an issue should have been raised by his first habeas counsel.
The petitioner was not incarcerated during the pendency of these charges, having arranged for the posting of a $25,000 bond. The petitioner was represented on other charges at the time of these events by private counsel, Attorney Richard Silverstein. The petitioner and his family were attempting to arrange for private counsel on these charges as well. There is no evidence that the petitioner was not told of his right to be represented by a public defender if he could not hire private counsel; and there is no evidence that he ever applied for a public defender. Rather, he was repeatedly told that he should have an attorney, and eventually he obtained the services of Mr. Dakers, who was employed by New Haven Legal Assistance.
The petitioner's citation to cases such as United States v.Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) is inapposite. The case law holds that an accused may not bedenied counsel at a critical stage of his criminal proceedings, not that he must be supplied with appointed counsel even if he does not request it.
Although Mr. Dakers got the case shortly before trial, he was able to adequately prepare. In fact he was familiar with the petitioner, having previously represented him in a criminal case that went to trial and in which he won an acquittal. There has been no showing of any prejudice to the petitioner by what appears to have been his own choice in declining to request a public defender and by postponing until shortly before trial the engagement of Mr. Dakers as his trial counsel. There is no ineffective assistance of habeas counsel in failing to raise this issue.
THE ISSUE OF SENTENCE REVIEW CT Page 235
The petitioner claims he was never notified by his trial counsel of his right to request a sentence review. Mr. Dakers's memory is somewhat different. He testified that he thought he had talked to the petitioner about sentence review or that he "put the papers in for it."
Conn. Gen. Stat. § 51-195 provides that upon imposition of sentence, "the clerk shall give written notice to the person sentenced of his right to make . . . a request [for sentence review]." There is certainly no evidence that the clerk did not do so. There is no evidence that trial counsel had any duty to the petitioner to do anything concerning sentence review. In fact the procedure is sufficiently simple that it is commonly done without the assistance of counsel.
The court cannot conclude that there was any ineffective assistance of trial counsel or habeas counsel on this issue.
CONCLUSION
In none of the claims made by the petitioner has he satisfied even the first requirement of Strickland v. Washington, supra. In no one instance, nor collectively, was trial counsel's performance on petitioner's behalf so deficient as to fall below "an objective standard of reasonableness." See Aillon v. Meachum,211 Conn. 352, 357 (1989). This is not to say that in all respects and with the benefit of hindsight a more convincing case on petitioner's behalf might not have been mounted. But that is not the legal standard. Competent representation does not mean that the representation was totally without error.
Nor was any imperfection in trial counsel's performance "so serious as to deprive the defendant of a fair trial, a trial whose result was unreliable." Strickland v. Washington, supra, 687. The petitioner has also failed to make a showing of actual innocence.
Accordingly, the petition for writ of habeas corpus is dismissed.
Patty Jenkins Pittman, Judge