******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# RAUL IVAN DIAZ *v.* COMMISSIONER
# OF CORRECTION
## (AC 44504)

Moll, Cradle and Clark, Js.

*Syllabus*

The petitioner, who had been convicted of murder and several other crimes in connection with a shooting incident, appealed to this court from the judgment of the habeas court dismissing in part and denying in part his fourth petition for a writ of habeas corpus. The petitioner had reasserted claims he made in his prior unsuccessful habeas petitions, alleging that the trial court violated his right to due process by failing to instruct the jury that its verdict must be unanimous and that his trial counsel, F, and two of his prior habeas counsel, V and G, rendered ineffective assistance. The court in the present case denied the petitioner's claims against F and V and rejected the petitioner's claim that G rendered ineffective assistance in failing to file a petition for certification to appeal from the second habeas court's judgment because, as a special public defender, she had no legal obligation to file an appeal on his behalf. The court dismissed the petitioner's remaining ineffectiveness claims against G on the ground that they were not ripe for adjudication and, thus, not justiciable. The court reasoned that the petitioner could not demonstrate that he was prejudiced until he had been denied permission to untimely file certain posttrial pleadings, including a late petition for certification to appeal. After the close of evidence in the present habeas action, the petitioner filed with the second habeas court a motion for permission to file a late petition for certification to appeal from its judgment, which had not been adjudicated at the time the habeas court in the present case rendered judgment. The petitioner thereafter filed a motion to open the judgment in the present habeas case to consider the second habeas court's denial of his motion for permission to file a late petition for certification to appeal. The court denied the motion to open, reasoning that no legal authority existed requiring a court to take judicial notice of pleadings and decisions after the close of evidence. *Held*:

1. The habeas court did not abuse its discretion in denying the petitioner certification to appeal as to his claim that his right to due process was violated when the trial court failed to instruct the jury that its verdict must be unanimous: the habeas court correctly concluded that the trial court properly denied the petitioner's request for a specific unanimity charge and his motion for a new trial, which was based on similar grounds, as the jury was instructed that its verdict on each count of the state's information must be unanimous, and the petitioner expressly conceded that the court's instructions did not sanction a nonunanimous verdict; moreover, contrary to the petitioner's assertion, the lack of a specific unanimity charge did not permit each juror to reach separate and distinct conclusions under different theories of liability premised on different evidence; furthermore, this court could not ignore the Supreme Court's determination in *State* v. *Famiglietti* (219 Conn. 605) that the petitioner was obligated to demonstrate that the jury instructions expressly sanctioned a nonunanimous verdict and that the absence of that threshold requirement ended review of his claim that he was deprived of his constitutional right to a unanimous verdict.

2. The habeas court did not abuse its discretion in denying the petitioner certification to appeal as to his ineffective assistance claims against F and V and correctly dismissed certain of his ineffective assistance claims against G for lack of justiciability:

   a. This court could not conclude that the habeas court erred in finding that F made a valid strategic decision not to obtain copies of the transcripts from the separate criminal trial of R and S, who were present at the time of the shooting, or that F's cross-examination of the state's witnesses was hindered by that decision; moreover, there was no merit to the petitioner's claim that F's failure to obtain the transcripts rendered him unable to make informed decisions as to which witnesses to call

and how to cross-examine the state's witnesses, as F had attended the trial of R and S and observed the witnesses testify, the petitioner conceded to this court that F had pointed out inconsistencies in the witnesses' testimony, and F's concern that the transcripts could be used against the petitioner was not unfounded; furthermore, this court concluded that the habeas court did not err in finding that F did not render ineffective assistance by failing to obtain the transcripts from the trial of R and S, the petitioner could not prevail on his claim that V rendered ineffective assistance by failing to submit those transcripts to the court in the petitioner's first habeas trial and to assert that F's failure to do so at the criminal trial greatly inhibited F's ability to impeach the credibility of the state's witnesses.

b. The petitioner could not prevail on his claim that the habeas court erred in dismissing as nonjusticiable his ineffective assistance of counsel claim against G, which was based on the court's determination that the claim was not ripe for adjudication because he failed to file a petition for certification to appeal from the second habeas court's judgment: because the petitioner did not file a motion for permission to file a late petition for certification to appeal from the second habeas court's judgment until after the close of evidence in the present case, his right to seek appellate review of that judgment had not been foreclosed and, thus, he could not demonstrate that he suffered any prejudice; moreover, the petitioner could not demonstrate that the court's denial of his motion to open the judgment in the present case reflected an abuse of discretion, as he could have sought permission from the second habeas court to file a late petition for certification to appeal at any time since that court's 2006 judgment and, thus, could have presented to the court in the present case evidence that he sought to present had his motion to open the judgment been granted.

Argued February 3—officially released August 2, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Chaplin, J.*; thereafter, the petition was withdrawn in part; judgment dismissing the petition in part and denying the petition in part; subsequently, the court denied the petitioner's motion to open the judgment, and granted in part and denied in part the petition for certification to appeal, and the petitioner appealed to this court. *Affirmed in part*; *appeal dismissed in part*.

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, former state's attorney, *C. Robert Satti, Jr.*, supervisory assistant state's attorney, and *Emily Dewey Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Raul Ivan Diaz, appeals from the judgment of the habeas court dismissing in part and denying in part his fourth petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court erred in rejecting his claims that (1) his right to due process was violated when the court in his underlying criminal trial failed to instruct the jury on the requirement of unanimity in its verdict, and (2) he was denied effective assistance by his trial counsel, his first habeas counsel and his second habeas counsel. We affirm the judgment of the habeas court as to the petitioner's claims as to his second habeas counsel. We dismiss the appeal as to the petitioner's remaining claims.

Our Supreme Court set forth the following facts in its decision affirming the judgment of conviction on the petitioner's direct appeal. "On the evening of June 26, 1991, Hector Gonzalez (Gonzalez) and his wife, Valerie Falcon, drove to Seaside Park in Bridgeport with their two year old son, Hector Gonzalez, Jr., and Falcon's eight year old son, William Guisti, Jr. While at the park, they met Fitzgerald Guisti (Guisti), an uncle of William Guisti, Jr. Guisti informed Gonzalez and Falcon that he was planning to drive to the east side of Bridgeport to purchase some marijuana. Gonzalez and Falcon agreed to follow Guisti in their vehicle, a Ford Bronco. The two vehicles then left the park. Gonzalez, accompanied by Falcon in the front seat and the two children in the back seat, drove the Bronco, while Guisti drove alone in his car.

"Guisti, followed by Gonzalez and his three passengers in the Bronco, proceeded to the corner of Hallett and Jane Streets where several men, including Gerald Torres, Sammy Segarra, Juan Rivera, a man identified only as 'Edgar' and the defendant, were congregated. Guisti pulled his car over to the side of the road to inquire whether any of the men had marijuana for sale. Gonzalez drove the Bronco past Guisti's vehicle and continued down Jane Street toward Helen Street.

"Torres, in response to Guisti's inquiry, stated that he had some marijuana and told Guisti to get out of his car. As Guisti was exiting his automobile, he heard Torres yell, 'that's the truck, let's do the truck,' an apparent reference to the Bronco, which had just passed by and was proceeding down Jane Street toward Helen Street. Meanwhile, Gonzalez had turned the Bronco around on Helen Street and was traveling back toward Jane Street in the direction of Guisti's vehicle. Torres, Segarra, Rivera, Edgar and the defendant hurriedly retrieved guns from a nearby automobile and hid behind several cars parked on the street to await Gonzalez' return.

"As Gonzalez approached and passed the parked cars

behind which they were hiding, the men ran out into the street and began shooting at the Bronco. One member of the group was armed with an Uzi-type machine gun and the others were carrying handguns. Guisti yelled to the group that there was a child in the Bronco, to which Torres replied, 'Fuck it, keep on,' and the shooting continued. The men fired about thirty-five to forty shots at the Bronco . . . approximately ten of which actually struck the vehicle. Three of the bullets passed through the passenger compartment of the Bronco and exited through the front windshield. William Guisti, Jr., was fatally injured when a 9 millimeter bullet passed through his heart, lung and liver." (Footnotes omitted.) *State* v. *Diaz*, 237 Conn. 518, 521–23, 679 A.2d 902 (1996).

Following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), two counts of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), and carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and he received a total effective sentence of 105 years of incarceration. His conviction was affirmed on direct appeal. Id., 520–21 and n.6.

In February, 1997, the petitioner filed his first habeas corpus action, in which he alleged that his trial counsel, Michael Fitzpatrick, and his appellate counsel, Kent Drager, rendered ineffective assistance. Attorney Joseph Visone represented the petitioner in that action. The habeas court rendered judgment dismissing the petition, and this court dismissed the petitioner's appeal from that judgment. See *Diaz* v. *Commissioner of Correction*, 92 Conn. App. 533, 886 A.2d 460 (2005), cert. denied, 277 Conn. 905, 894 A.2d 986 (2006).

In February, 2004, the petitioner filed a second habeas action, in which he challenged his criminal conviction on the grounds that his constitutional right to a unanimous verdict was violated and that the trial court improperly refused to poll the jury. Attorney Genevieve P. Salvatore represented the petitioner in that habeas action. The petitioner and the respondent, the Commissioner of Correction, filed motions for summary judgment as to whether an amendment to the rule of practice pertaining to jury polling applied retroactively to the petitioner's case. See Practice Book § 42-31. The habeas court concluded that it did not and rendered judgment dismissing the petition. See *Diaz* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-04-0004379 (October 18, 2006). The petitioner took no appeal from the judgment of the second habeas court.

In May, 2007, the petitioner filed a third habeas action, and Attorney Cheryl Juniewic was appointed to represent him. In that action, the petitioner reiterated his claim that he was deprived of his constitutional right

to a unanimous verdict and again attacked the adequacy of the representation provided by Fitzpatrick, Drager, Visone and Salvatore. Approximately one week prior to trial, however, the petitioner withdrew his petition.

On February 4, 2011, the petitioner filed this action, his fourth habeas petition. In his amended petition, the petitioner repeats his claims of ineffective assistance by Fitzpatrick, Visone and Salvatore.[2] He also reasserts his claim that his right to due process was violated when the court in his underlying criminal trial failed to instruct the jury on the requirement of unanimity for its verdict. On March 20, 2013, the respondent filed his return, admitting in part and denying in part the allegations set forth in the amended petition. On May 30, 2013, the matter was tried to the habeas court, *Sferrazza*, *J.* On August 14, 2013, the habeas court, sua sponte, dismissed the entire petition on the ground that the court was deprived of subject matter jurisdiction because the petition consisted of claims that had been deliberately bypassed as a result of the petitioner's withdrawal of his third habeas petition. This court reversed the judgment of dismissal and remanded the case to the habeas court for further proceedings. See *Diaz* v. *Commissioner of Correction*, 157 Conn. App. 701, 702–703, 117 A.3d 1003 (2015), appeal dismissed, 326 Conn. 419, 165 A.3d 147 (2017).

On October 28, 2019, the petitioner's claims were again tried to the habeas court, *Chaplin*, *J.*[3] The habeas court filed a memorandum of decision on September 4, 2020, dismissing the petitioner's claims of ineffective assistance as to Salvatore and denying the remainder of his claims. On September 10, 2020, the petitioner filed a motion to open the judgment with respect to his claims regarding Salvatore. The habeas court denied that motion. The habeas court thereafter granted certification to appeal as to its dismissal of the petitioner's claims of ineffective assistance as to Salvatore and denied certification to appeal as to the petitioner's remaining claims. This appeal followed. Additional facts will be set forth as necessary.

Our analysis of the petitioner's claims on appeal is guided by the following principles. General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"Our Supreme Court has explained that one of the goals of this statute is to limit the number of appeals

filed in criminal cases and to hasten the conclusion of the criminal justice process. . . . Additionally, § 52-470 [g] acts as a limitation on the scope of review, and not the jurisdiction, of the appellate tribunal. . . .

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Citations omitted; internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, 151 Conn. App. 559, 564–65, 96 A.3d 587, cert. denied, 314 Conn. 929, 102 A.3d 709 (2014), and cert. dismissed, 314 Conn. 929, 206 A.3d 764 (2014). "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 215, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

As noted, the habeas court granted in part and denied in part the petitioner's petition for certification to appeal. We address each of his claims on appeal with the foregoing principles in mind.

I

The petitioner first claims that the habeas court erred in rejecting his claim that his right to due process was violated when the court in his underlying criminal trial failed to instruct the jury that it was required to unanimously agree on the factual basis for its verdicts, or to grant his motion for a new trial wherein he argued, inter alia, that the court should have given such an instruction. The petitioner also argues that the habeas court abused its discretion in denying his petition for certification to appeal from the habeas court's denial of this claim. We are not persuaded.

At the petitioner's criminal trial, the court instructed the jury, inter alia, that "whatever your verdicts may be, they must be unanimous as to each count, which

you are to consider separately and independently of each other." Fitzpatrick took exception to the court's failure to instruct the jurors "that they must be unanimous as to whether the murder was committed via the doctrine of transferred intent or was the murder committed via a direct theory of liability." The petitioner later filed a motion for a new trial asserting similar grounds. He argued that, "without a specific unanimity instruction, it is unclear whether . . . the petitioner was [found] guilty under the direct theory of liability, as opposed to the theory of transferred intent, or on the coconspiratorial theory under the *Pinkerton* doctrine."[4] The court denied the petitioner's motion.[5]

At the habeas trial, the petitioner reiterated his argument that the criminal trial court erred in failing to instruct the jury that it must be unanimous "as to whether the petitioner was guilty under the direct theory of liability, as opposed to the theory of transferred intent, or under the *Pinkerton* doctrine." The habeas court rejected this argument, ruling that, pursuant to *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), the petitioner was obligated to demonstrate that the trial court's instructions expressly sanctioned a nonunanimous verdict, and that, because the petitioner expressly conceded that the criminal trial court's instructions in this case did not do so, he was not entitled to relief. The habeas court rejected the petitioner's claim that the criminal trial court erred in denying his motion for a new trial for the same reason.

It is well established that a specific unanimity charge is not required in every case. "In *State* v. *Famiglietti*, [supra] 219 Conn. 619–20, [our Supreme Court] set forth a multipartite test to determine whether a trial court's omission of a specific unanimity charge warrants a new trial. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged. . . .

"This court is required to conclude, when reviewing a court's instruction to the jury, that [t]he absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test." (Citation omitted; internal quotation marks omitted.) *State* v. *Jessie L. C.*, 148 Conn. App. 216, 232, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014). Our Supreme Court has referred to that initial determination as to whether the trial court "expressly sanctioned" a nonunanimous verdict as a

"threshold requirement" that must be met before considering the enumerated prongs of the *Famiglietti* test. Id., 233 n.5; see also *State* v. *Martinez*, 278 Conn. 598, 610–11, 900 A.2d 485 (2006).

In the present case, the petitioner concedes, as he must, that the trial court's instructions to the jury did not expressly sanction a nonunanimous verdict. He nevertheless argues that he was deprived of his constitutional right to a unanimous verdict because the lack of a specific unanimity charge "effectively permitted a jury free-for-all in deliberations for each juror to reach separate and distinct conclusions under different theories of liability and premised upon different evidence offered by the state at the [petitioner's] trial." In support of his claim, the petitioner cites to *State* v. *Martinez*, supra, 278 Conn. 598, in which our Supreme Court held that the defendant was deprived of his constitutional right to a unanimous jury verdict. See id., 601. Like the petitioner in this case, the defendant in *Martinez* was charged both under a theory of accessorial liability and liability under the *Pinkerton* doctrine. In *Martinez*, the trial court instructed the jury, inter alia: "It is not necessary . . . that you unanimously agree whether the defendant committed the crime of attempt to commit murder either as the principal or as an accessory or as a coconspirator. . . . You need not be unanimous as to any one theory of liability." (Emphasis omitted; internal quotation marks omitted.) Id., 606. The Supreme Court held that "[t]he trial court's instructions in the present case satisfy the threshold requirement under *Famiglietti*, namely, that the trial court included in its instructions language 'expressly sanctioning' a nonunanimous verdict." Id., 610–11. Having so concluded, the Supreme Court then analyzed the defendant's claim under the two enumerated prongs of *Famiglietti*, ultimately holding that the defendant was deprived of his constitutional right to a unanimous verdict. See id., 611–20.

*Martinez* is readily distinguishable from this case in that the trial court here did not sanction a nonunanimous verdict. The petitioner contends that that is a "distinction without a difference . . . ." We disagree. The petitioner's argument essentially asks this court to ignore the threshold requirement set forth in *Famiglietti*. We are not permitted to do so.

As noted, our Supreme Court has expressly held that the absence of a jury instruction that sanctions a nonunanimous verdict ends our review of a claim that a defendant was deprived of his constitutional right to a unanimous verdict. See *State* v. *Famiglietti*, supra, 219 Conn. 619. In this case, there was no language in the court's jury instructions sanctioning a nonunanimous verdict. To the contrary, the court instructed the jury that its verdict on each count must be unanimous. "[G]iven the court's admonitions concerning unanimity, we must presume that the jury, in the absence of a

fair indication to the contrary . . . followed the court's instruction as to the law." (Internal quotation marks omitted.) *State* v. *Jessie L. C.*, supra, 148 Conn. App. 233. Accordingly, the habeas court properly concluded that the petitioner's right to a unanimous verdict was not violated when the criminal trial court denied his request for a specific unanimity instruction or denied his motion for a new trial. Furthermore, because we do not believe that this issue is debatable among jurists of reason, we further conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

## II

The petitioner also challenges the habeas court's rejection of his claims of ineffective assistance by Fitzpatrick, Visone and Salvatore. We begin by setting forth the well settled standard of review of claims of ineffective assistance of counsel. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the *Strickland* test, when a petitioner alleges ineffective assistance of counsel, he must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of the *Strickland* test, failure to satisfy either prong is fatal to a habeas petition. . . .

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. [Id.] 689. Furthermore, the right to counsel is not the right to perfect counsel." (Internal quotation marks omitted.) *Quint* v. *Commissioner of Correction*, 211 Conn. App. 27, 32–33, 271 A.3d 681, cert. denied, 343 Conn. 922, 275 A.3d 211

(2022). With these principles in mind, we address the petitioner's claims of ineffective assistance of counsel in turn.

A

We begin with the petitioner's claim that his criminal trial counsel, Fitzpatrick, provided ineffective assistance. The petitioner also claims that the habeas court erred in denying certification to appeal as to his claims against Fitzpatrick. We disagree.

In his habeas petition, the petitioner alleged that Fitzpatrick's representation of him was deficient in that Fitzpatrick failed to obtain a copy of the transcripts from the trial of his coconspirators, Rivera and Segarra, who were tried jointly and acquitted prior to the petitioner's trial. The petitioner argued that Fitzpatrick's failure to obtain the transcripts from that trial rendered him unable to effectively cross-examine Guisti and Gonzalez. In rejecting this claim, the habeas court reasoned: "Fitzpatrick testified that he observed the historical witnesses who testified at the Rivera and Segarra trial, and he spoke to the attorneys representing Rivera and Segarra after each day of trial that he did not observe. [Fitzpatrick] testified that he made a strategic decision not to obtain the transcripts. He explained that he did not find the testimony of Gonzalez or Guisti helpful, and, thus, he did not want to memorialize the testimony by obtaining transcripts. In elaborating on inconsistencies in Gonzalez' and Guisti's testimony, he noted that he strategically chose only to point out material inconsistencies that did not conflict with the defense strategy. When inconsistencies in the testimony of certain witnesses were highlighted, he explained that he did not find the portions of testimony to contain any meaningful inconsistencies, nor did he find the testimony helpful to the petitioner's defense, and he concluded that he was glad that he had not obtained the transcripts. Exhibit 17[6] demonstrates that [Visone] expressed a similar opinion to [that of Fitzpatrick]: that the purported inconsistencies were not helpful to the petitioner's case.

"Based upon the court's observations at trial and independent review of the exhibits, the court credits [Fitzpatrick's] testimony that he made a strategic decision not to obtain the transcripts from the Rivera and Segarra trial and not to submit the transcripts at the petitioner's underlying criminal trial."

The habeas court also rejected the petitioner's claim that Fitzpatrick failed to effectively impeach and to attack the credibility of Guisti and Gonzalez because he had not obtained the transcripts from the trial of Rivera and Segarra. The habeas court explained: "Fitzpatrick testified that he observed the testimony of historical witnesses at the Rivera and Segarra trial. In his posttrial brief, the petitioner concedes that [Fitzpatrick] did highlight inconsistencies in each witness' testimony

at the petitioner's underlying criminal trial; however, he alleges that the cross-examination was ineffective due to a lack of obtaining the Rivera and Segarra transcripts. The petitioner's arguments amount to the petitioner second-guessing [Fitzpatrick's] representation after conviction, and extending an invitation for this court to examine [Fitzpatrick's] defense after it 'proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' . . . However, this court declines the petitioner's invitation. [Fitzpatrick's] testimony demonstrates that the transcripts were not the only source by which [he] could have become aware of the inconsistencies that the petitioner claims were material and significant to his defense. [Fitzpatrick's] testimony also demonstrates that he made a tactical decision not to obtain the Rivera and Segarra transcripts because the balance of the testimony of Guisti and Gonzalez [was] not helpful to the petitioner's defense. Furthermore, this allegation is merely a restatement of the petitioner's allegation [that Fitzpatrick was ineffective in failing to obtain the transcripts from the trial of Rivera and Segarra]. Therefore, this court finds that the petitioner failed to demonstrate that [Fitzpatrick] failed to effectively impeach and attack the credibility of Guisti and Gonzalez. Therefore, this court also finds that the petitioner failed to demonstrate that such failure resulted from his failure to obtain the Rivera and Segarra trial transcripts." (Citation omitted.)

On the basis of the foregoing, the habeas court concluded that the petitioner failed to demonstrate that Fitzpatrick rendered ineffective assistance of counsel by failing to obtain the transcripts from the trial of Rivera and Segarra or by failing to effectively impeach and attack the credibility of Guisti and Gonzalez as a result of his failure to obtain those transcripts.

On appeal, the petitioner argues that the habeas court erred in reaching these conclusions. We disagree.

"[J]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . In reconstructing the circumstances, a reviewing court is required not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) *Tatum* v.

*Commissioner of Correction*, 211 Conn. App. 42, 73, 272 A.3d 218, cert. granted, 343 Conn. 932, 272 A.3d 218 (2022). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . . [T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citation omitted; internal quotation marks omitted.) Id., 73–74.

This court has explained that "[t]here may be cases where it is not necessary to read the entire transcript of the trial of the codefendant. . . . Therefore, defense counsel's failure to order and review the transcript of the codefendant's trial is not per se deficient performance. The scope of counsel's obligation to investigate must be addressed on a case-by-case basis, and we do not intend to suggest a blanket rule for all occasions." *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 552–53 n.11, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

The petitioner argues that the habeas court erred in rejecting his claim that Fitzpatrick "had an affirmative obligation to review the prior testimony of the primary witnesses in the Rivera and Segarra matter to ascertain viable areas of impeachment and make an informed decision as to what witnesses to call in support of his own case-in-chief." In so arguing, the petitioner ignores the undisputed fact that Fitzpatrick personally attended the trial of Rivera and Segarra and paid particular attention to the historical witnesses who would be pertinent to the petitioner's case. Therefore, the petitioner's contention that Fitzpatrick was unable to make an informed decision as to which witnesses to call in defending the petitioner and how to cross-examine the state's witnesses is without merit.

The petitioner also fails to acknowledge that the testimony of Gonzalez and Guisti at the trial of Rivera and Segarra was not entirely helpful to him and, in fact, was potentially harmful to his defense. For instance, although Gonzalez testified at the petitioner's trial that he was not able to see whether the petitioner had a gun on the night in question, he testified at the trial of Rivera and Segarra that he saw the petitioner with a gun in his hand. Accordingly, not only was it unnecessary for Fitzpatrick to obtain the transcripts from the trial of Rivera and Segarra, but Fitzpatrick's concern that those transcripts could be used against the petitioner was not unfounded.

Moreover, in his brief to this court, the petitioner concedes that Fitzpatrick "did point out some of the inconsistencies in [the] testimony [of Guisti and Gonzalez], [but] he was unable to effectively attack their credibility based upon the transcripts from the [trial of] Rivera and Segarra . . . ." Again, Fitzpatrick attended

the trial of Rivera and Segarra and observed the witnesses testify in person. As we have noted, there is more than one way to provide effective assistance in defending a client, and an attorney is not necessarily required to obtain the transcripts from the criminal trial in order to competently represent that client. See *Tatum* v. *Commissioner of Correction,* supra, 211 Conn. App. 73–74; *Taft* v. *Commissioner of Correction,* supra, 159 Conn. App. 552–53 n.11. On the basis of the record before us, we cannot conclude that the habeas court erred in finding that Fitzpatrick made a valid strategic decision in choosing not to obtain the transcripts from the trial of Rivera and Segarra or that Fitzpatrick's cross-examination of the state's witnesses was hindered by his failure to obtain those transcripts when he had personally observed the testimony of those witnesses.[7] Because we do not believe that this issue deserves encouragement to proceed further, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to his claims as to Fitzpatrick.

B

The petitioner also claims that the habeas court erred in rejecting his claim that Visone rendered ineffective assistance when he represented him in his first habeas action. He also contends that the habeas court abused its discretion in denying his petition for certification to appeal to this court. We disagree.

"Our Supreme Court, in *Lozada* v. *Warden,* 223 Conn. 834, 843, 613 A.2d 818 (1992), established that habeas corpus is an appropriate remedy for the ineffective assistance of appointed habeas counsel, authorizing what is commonly known as a habeas on a habeas, namely, a second petition for a writ of habeas corpus . . . challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus . . . [that] had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. . . . Nevertheless, the court in *Lozada* also emphasized that a petitioner asserting a habeas on a habeas faces the herculean task . . . of proving in accordance with *Strickland* [v. *Washington,* supra, 466 U.S. 687], both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . Any new habeas trial would go to the heart of the underlying conviction to no lesser extent than if it were a challenge predicated on ineffective assistance of trial or appellate counsel. The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement. . . .

"Simply put, a petitioner cannot succeed as a matter of law—and, thus, cannot show good cause to proceed to trial—on a claim that his habeas counsel was ineffective by failing to raise a claim against trial counsel or

prior habeas counsel in a prior habeas action unless the petitioner ultimately will be able to demonstrate that the claim against trial or prior habeas counsel would have had a reasonable probability of success if raised." (Citations omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 319–20, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018).

Like his claims concerning Fitzpatrick, the petitioner's claim as to Visone is also related to the transcripts from the trial of Rivera and Segarra. The petitioner claimed in this fourth habeas action, and reiterates in this appeal, that Visone rendered ineffective assistance when he failed to submit the transcripts to the court during the first habeas trial and to assert the claim that "Fitzpatrick's failure to procure and utilize the transcripts greatly inhibited his ability to effectively impeach the credibility of the state's witnesses [and] prejudiced the petitioner during his criminal trial [and that] such failure of prior habeas counsel to effectively obtain and raise a claim related to trial counsel's failure also caused the petitioner prejudice at the respective habeas proceedings." Because we have concluded that the habeas court did not err in finding that Fitzpatrick did not render ineffective assistance in failing to obtain the transcripts, the petitioner cannot prevail on his claim that the habeas court erred in finding that Visone did not provide ineffective assistance in failing to pursue his claims as to Fitzpatrick. We further conclude that the habeas court did not abuse its discretion in denying the petitioner certification to appeal with respect to his ineffective assistance claims as to Visone.

### C

The petitioner finally claims that the habeas court erred in rejecting his claim that Salvatore rendered ineffective assistance when she represented him in his second habeas action. Specifically, the petitioner argues that the habeas court erred when it dismissed his claim that Salvatore rendered ineffective assistance when she failed to file a petition for certification to appeal from the judgment of the second habeas court on the ground that the petitioner's claim against Salvatore was not justiciable. The petitioner also contends that the habeas court erred in denying his motion to open the judgment to consider events that occurred following the habeas court's dismissal of this claim.[8] We are not persuaded.

With respect to his claim that Salvatore rendered ineffective assistance, the habeas court set forth the following relevant facts and procedural history: "Salvatore . . . filed a motion for summary judgment in which she argued that the then newly mandatory jury polling rule should have been applied retroactively. Subsequently, the respondent filed a motion for summary judgment. Thereafter, the habeas trial court, *Fuger*, *J.*, denied [Salvatore's] motion for summary judgment,

granted the respondent's motion for summary judgment and dismissed the petitioner's second habeas petition.

"Regarding the petitioner's claim that [Salvatore] failed to file an appeal [from the dismissal of his second habeas petition], the court finds that [Salvatore] had no legal obligation to file an appeal on the petitioner's behalf. [Salvatore] testified that her representation of the petitioner as a special public defender was limited to habeas trial court matters and did not include appellate matters. The court finds that [Salvatore's] representation of the petitioner as his habeas trial counsel did not include filing an appeal on his behalf. Therefore, the petitioner cannot meet his burden of demonstrating that [Salvatore's] failure to file an appeal on his behalf constituted ineffective assistance of counsel.

"In support of his claims, the petitioner testified . . . that, after the motion for summary judgment was filed . . . he did not have further communication with [Salvatore]. The petitioner testified that she did not notify him of the court's denial of the motion for summary judgment, the [court's] granting [of] the respondent's motion for summary judgment or the court's dismissal of his habeas petition. He further testified that she did not discuss with him the petition for certification to appeal, the application for waiver [of] fees and costs on appeal, or the motion for the appointment of appellate counsel. Additionally, he testified that [Salvatore] did not file a petition for certification to appeal, did not file an application for a waiver of fees and costs on appeal, and did not file a motion for the appointment of appellate counsel. He testified that he learned of the dismissal of his habeas petition in December, 2006, or January, 2007, when he contacted the [courthouse] clerk's office. The petitioner testified that, in his first [habeas] trial, his petition for certification to appeal was filed by the Office of the Chief Public Defender. Finally, he testified that he would have appealed [from] the [habeas] court's decision had he had the opportunity. On cross-examination, the petitioner testified that he knew of his appellate rights and how to file appellate paperwork since 1994 and he filed an application for [a] waiver of costs and fees in 1994.

"At the May, 2013 habeas trial, [Salvatore] testified that she did not recall discussing the denial of the motion for summary judgment with the petitioner, but it was her practice to communicate the result of a judicial action to the client, whether it occurred in person, by telephone, or by letter. . . . She testified that she was unable to complete a fee waiver for the petitioner because he had to complete it for himself before filing it. Additionally, she testified that the rules of practice prohibit attorneys from filing a frivolous petition for certification to appeal. In cases where she did not believe a petition for certification to appeal had merit, she left it to the client to file the petition for certification

to appeal.

"On June 1, 2020, this court issued an order requesting the parties to submit supplemental briefing addressing whether the ineffective assistance of counsel claims as to [Salvatore] were justiciable despite the [petitioner's] never filing a motion for appointment of appellate counsel, a motion for costs and fees on appeal and a petition for certification to appeal, and the habeas [court's] never deciding whether the petition or motions should be rejected as untimely filed. . . . In the petitioner's response to the court's order, filed on July 10, 2020, the petitioner indicated that a motion for permission [to file] a late petition for certification to appeal was filed in the petitioner's prior habeas matter on June 22, 2020. This motion was not filed, however, prior to the close of evidence in the present matter and, therefore, will not be considered by this court in its analysis of the claims at issue here.

"It is undisputed that a motion for appointment of appellate counsel, a motion for costs and fees on appeal and a petition for certification to appeal were not filed in the petitioner's prior habeas matter. Until the motions are filed by the petitioner and permission to file late is denied by the court, the petitioner cannot demonstrate that he has suffered any prejudice. See *Tyson* v. *Commissioner of Correction*, 155 Conn. App. 96, 107, 109 A.3d 510 (holding that, until motion for permission to file late petition for certification is filed and denied, petitioner cannot allege viable ineffective assistance of counsel claim as to counsel's prior failure to file petition for certification to appeal), cert. denied, 315 Conn. 931, 110 A.3d 432 (2015); see also *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 275, 77 A.3d 113 (2013) (finding petitioner's ineffective assistance of counsel claim for failure to file petition for certification to appeal to Supreme Court was not ripe for adjudication because 'petitioner's claim [was] contingent on [the Supreme Court's] denial of his motion to file a late petition for certification to appeal, an event that may never occur, thereby obviating any need for a resolution of the issues presented'). As a result, the petitioner's remaining ineffective assistance of counsel claims as to [Salvatore's] representation are not yet ripe for adjudication and must be dismissed." (Citation omitted.)

On September 10, 2020, the petitioner filed a motion to open the judgment on the ground that, on August 13, 2020, the second habeas court had denied his request for permission to file a late petition for certification to appeal from the judgment of that court. The habeas court denied the motion to open, reasoning: "After consideration of the petitioner's arguments for opening the evidence to have this court consider pleadings and rulings made after the close of evidence, the court has found no legal authority that stands for the proposition that a court is under an ongoing duty to monitor cases

of which the court has taken judicial notice for new pleadings and decisions after the close of evidence. The petitioner's motion to open [the] evidence subsequent to the [court's] rendering a memorandum of decision is hereby denied."

On appeal, the petitioner challenges the habeas court's dismissal of his ineffective assistance claims as to Salvatore on the ground that it was not justiciable and the habeas court's denial of his related motion to open that judgment.

We first address the petitioner's claim that the habeas court erred in dismissing his claim of ineffective assistance on the ground that it was not justiciable because the second habeas court had not yet denied his motion for permission to file a late petition for certification to appeal to this court. "[J]usticiability comprises several related doctrines, namely, standing, *ripeness*, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of a ripeness claim] is plenary. . . .

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Emphasis in original; internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358–59, 258 A.3d 71 (2021).

As noted, the habeas court relied on *Janulawicz* v. *Commissioner of Correction*, supra, 310 Conn. 265, and *Tyson* v. *Commissioner of Correction*, supra, 155 Conn. App. 96, in concluding that the petitioner's claims as to Salvatore's representation in his second habeas action were not ripe for adjudication. *Janulawicz* involved a claim that the petitioner was prejudiced by his trial counsel's failure to file a petition for certification to appeal to the Supreme Court from a judgment of this court. Our Supreme Court held that the petitioner's habeas petition "is not ripe for adjudication in view of the fact that the petitioner's injury is contingent on this court's denial of a motion to file a late petition for certification, a motion that the petitioner has never filed, because he will not suffer such an injury if this court were to grant his request for permission to file an untimely petition for certification to appeal." *Janulawicz* v. *Commissioner of Correction*, supra, 271–72. The reasoning of *Janulawicz* was thereafter applied by this court in *Zillo* v. *Commissioner of Correction*, 195

Conn. App. 71, 223 A.3d 818 (2019), cert. denied, 334 Conn. 924, 223 A.3d 379 (2020), wherein the petitioner, like the petitioner in *Janulawicz*, alleged that his appellate counsel's deficient performance prevented him from filing a timely petition for certification to appeal to our Supreme Court from this court's affirmance of the judgment of conviction. Citing *Janulawicz*, this court held: "Notwithstanding that the petition for certification would have been late, because the petitioner never attempted to file a motion for permission to file a late petition for certification, the habeas court lacked jurisdiction to decide this claim." Id., 74 n.1.

Although *Janulawicz* and *Zillo* involved petitions for certification to appeal from this court to our Supreme Court, the pertinent reasoning of *Janulawicz* and *Zillo*, which is consistent with the fundamental principle of ripeness that we do not prematurely address hypothetical injuries that may never materialize, also applies to a claim that habeas counsel failed to file a petition for certification to appeal to this court from a judgment of the habeas court. As this court explained in *Tyson*, "[a] petition for certification to appeal from the judgment of the habeas court is filed in the habeas court. See General Statutes § 52-470 (g). The petitioner's failure to comply with the ten day limitation period of § 52-470 (g) does not necessarily deprive him of the right to file an untimely appeal. The decision to grant or deny a motion for permission to file late a petition for certification to appeal is left to the sound discretion of the habeas court. . . . In exercising that discretion, a habeas court should take into account the reasons for the delay. . . . A petitioner presenting a petition for a writ of habeas corpus due to the ineffective assistance of counsel must allege and prove both deficient performance of counsel and resulting harm or prejudice. . . . Until the petitioner files a motion for permission . . . to file late a petition for certification to appeal with the habeas court . . . and the [motion is] denied, the petitioner has suffered no prejudice. Until [the] motion for permission to file late is denied, the petitioner cannot allege a viable petition for a writ of habeas corpus on the ground of ineffective assistance of counsel [for failure to file a petition for certification to appeal to this court from the judgment of the habeas court]." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Tyson* v. *Commissioner of Correction*, supra, 155 Conn. App. 106–107.

In this case, the petitioner did not file a motion for permission to file a late petition for certification to appeal from the judgment of the second habeas court until the habeas court in the present case ordered the parties to brief the issue of justiciability, which occurred after the close of evidence. That motion had not been adjudicated when the habeas court issued its decision in the present case, and the petitioner's injury was contingent on the second habeas court's denial of

the motion. Because the motion had not yet been denied, the petitioner's right to seek appellate review of the judgment of the second habeas court had not yet been foreclosed. Accordingly, the habeas court properly concluded that the petitioner's claim of ineffective assistance as to Salvatore was not justiciable and properly dismissed it.[9]

The petitioner also claims that the habeas court erred in denying his motion to open the judgment to consider the denial by the second habeas court of his motion for permission to file a late petition for certification to appeal from the judgment of that court. "Habeas corpus is a civil proceeding. . . . The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [habeas] court's discretion, and the action of the [habeas] court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 77, 256 A.3d 684, cert. denied, 339 Conn. 909, 261 A.3d 744 (2021). "One of the essential requirements for the granting of [a motion to open] is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial." (Internal quotation marks omitted.) Id., 76.

Here, at any time since the date of the 2006 judgment of the second habeas court, the petitioner, either through counsel or on his own,[10] could have sought permission to file a late petition for certification to appeal from the judgment of the habeas court. Indeed, the petitioner challenged Salvatore's representation of him in the third habeas action that he filed in 2007, but he withdrew that petition prior to trial. If he had not done so, or if he had sought permission to file a late petition for certification to appeal from the judgment of the second habeas court at any time during the period of approximately fourteen years between the date of that judgment and the trial in this habeas action, he could have presented the habeas court in this action with the evidence that he sought to present if the habeas court granted his motion to open. On the basis of the record before us, we conclude that the petitioner is unable to demonstrate that the court's ruling on the motion to open reflects an abuse of discretion.

The judgment of the habeas court is affirmed with respect to the petitioner's claims as to his second habeas counsel; the appeal is dismissed as to the petitioner's remaining claims.

In this opinion the other judges concurred.

[1] The habeas court granted in part and denied in part the petitioner's petition for certification to appeal from the judgment of the habeas court. We are mindful of our jurisprudence that, following the granting of a petition for certification to appeal, "at least in the absence of demonstrable prejudice, the legislature did not intend the terms of the habeas court's grant of certification to be a limitation on the specific issues subject to appellate review."

*James L.* v. *Commissioner of Correction*, 245 Conn. 132, 138, 712 A.2d 947 (1998). Thus, "once the habeas court, in its gatekeeping function, certified that appellate review was warranted, any issue could be presented on appeal, so long as the opposing party is not prejudiced." *Logan* v. *Commissioner of Correction*, 125 Conn. App. 744, 753 n.7, 9 A.3d 776 (2010), cert. denied, 300 Conn. 918, 13 A.3d 333 (2011). In *James L.*, however, the court expressly noted: "This case does not present a question of mixed certification, in which a habeas court expressly grants permission to appeal with regard to some, but not all, of the issues on which certification was requested." *James L.* v. *Commissioner of Correction*, supra, 138 n.7. It remains unsettled whether a habeas petitioner is limited in the claims he or she may pursue on appeal when a habeas court grants certification to appeal as to certain specific claims and denies certification to appeal as to others. Because neither party has challenged the propriety of the habeas court's unusual mixed certification order, we leave that issue for another day and simply address each of the petitioner's claims in turn.

[2] He also alleged that Juniewic represented him ineffectively in his third habeas action. He withdrew this claim prior to trial.

[3] The petitioner and Fitzpatrick testified at the habeas trial. The parties also submitted transcripts of the testimony of Visone and Salvatore from the prior habeas trial before Judge Sferrazza.

[4] See *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). "Under the *Pinkerton* doctrine . . . a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Internal quotation marks omitted.) *State* v. *Apodaca*, 303 Conn. 378, 393–94, 33 A.3d 224 (2012).

[5] The petitioner did not challenge the denial of his motion for a new trial in his direct appeal, but the respondent did not claim in the habeas court that the claim was procedurally defaulted. Accordingly, we address the claim on the merits.

[6] Exhibit 17 is a transcript of Visone's testimony from the first habeas trial on May 30, 2013, before Judge Sferrazza. More specifically, Visone opined that the transcripts at issue did not, in fact, demonstrate an inconsistency in Gonzalez' testimony. At the Rivera/Segarra trial, Gonzalez testified that he observed four individuals with guns at the time of the incident at issue. One of those individuals was the petitioner.

[7] Because we conclude that Fitzpatrick's representation of the petitioner was not deficient, we do not reach the issue of whether the petitioner was prejudiced by his assistance. See *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 13, 242 A.3d 107 ("a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition" (internal quotation marks omitted)), cert. denied, 335 Conn. 983, 242 A.3d 105 (2020).

[8] As noted herein, the habeas court granted certification to appeal as to the petitioner's claims regarding Salvatore.

[9] The petitioner argues that he was not required to prove prejudice because, pursuant to *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 699 A.2d 1003 (1997), prejudice is presumed when counsel fails to file a petition for certification to appeal to this court from the judgment of the habeas court. See id., 707. In *Iovieno*, the court held: "In the present case, as in the case where a direct appeal has been foreclosed, there are exceptional circumstances that require us to dispense with the prejudice analysis ordinarily required under *Strickland*. Here, the result of counsel's failure to file the petition for certification to appeal within the statutorily prescribed limitation period was to deprive the petitioner of the opportunity to seek appellate review of the dismissal of his first habeas petition." Id., 706. *Iovieno* is distinguishable from this case, as well as from *Janulawicz*, *Zillo* and *Tyson*, because the petitioner in *Iovieno* had filed a late petition for certification to appeal and that petition had been denied, rendering his claim ripe for adjudication.

[10] In light of the voluminous motions filed by the petitioner himself since the date of his conviction, it cannot reasonably be argued that he was unfamiliar with motion practice in the habeas court. As noted herein, the petitioner testified that he knew of his appellate rights and how to file appellate paperwork since 1994, and he filed an application for waiver of costs and fees in 1994.